**Victor BAYRON, Petitioner-Appellant,**

**v.**

**Correctional Officer TRUDEAU and Correctional Counselor G. Petrushun, Individually and In Their Official Capacities, et al., Respondents-Appellees.**

**No. 688, Docket 82–2223.**

United States Court of Appeals, Second Circuit.

Submitted Jan. 14, 1983.

Decided Feb. 25, 1983.

Victor Bayron, pro se.

Before FEINBERG, Chief Judge, and CARDAMONE and DAVIS,* Circuit Judges.

FEINBERG, Chief Judge:

Victor Bayron, a prisoner at Clinton Correctional Facility, appeals pro se from a judgment of the United States District Court for the Northern District of New York dismissing sua sponte and without service of process Bayron's complaint under 42 U.S.C. § 1983. Because the dismissal of the complaint was premature, the judgment of the district court is vacated and the case is remanded for the service of process and further proceedings.

* Honorable Oscar H. Davis of the United States Court of Appeals for the Federal Circuit, sitting

I.

In April 1981, Bayron filed a complaint in the Northern District against defendants Correctional Officer Trudeau and Correctional Counselor Petrushun in their individual and official capacities. The complaint, set forth on a form that the Northern District clerk's office supplies to prisoners, covered seven pages. Bayron alleged, among other things, that during a search of his cell, the named officers in his presence either destroyed or took without ever returning certain books, medication and other personal items, and intentionally damaged other personal belongings. The complaint also alleged that one of the officers read through Bayron's legal papers, and that Officer Petrushun filed an intentionally false misbehavior report against him. The last action allegedly resulted in unwarranted and arbitrary disciplinary action by the Adjustment Committee, including "false imprisonment" for seven days and lost privileges for 23 days. Bayron sought declaratory and injunctive relief against the officers as well as compensatory and punitive damages.

The district judge referred the complaint to Magistrate Edward M. Conan. In April 1982, the magistrate granted Bayron in forma pauperis status and ordered the complaint to be filed without payment of fees. At the same time, in a three-page "Report-Recommendation," the magistrate recommended that the complaint be dismissed. Despite the allegations in the complaint regarding the cell search, property seizure and destruction and reading of Bayron's legal papers, the magistrate interpreted Bayron's complaint as only seeking "relief from what he claims was an unfavorable Adjustment Committee result." The magistrate concluded that since in this regard Bayron did not allege any specific constitutional deprivation, such as lack of a hearing, he did not state a cause of action under § 1983.

by designation.

In June 1982, the district judge approved the magistrate's Report-Recommendation, and dismissed Bayron's complaint sua sponte. Up to this point, there had been no service of process upon defendants and, of course, no appearance by or response from them. A copy of the judge's order of dismissal was, however, apparently sent to the Attorney General of New York State. It is not clear from the record whether the Attorney General had also received earlier a copy of the magistrate's Report-Recommendation.

In any event, Bayron filed a timely notice of appeal and, subsequently, a brief and appendix in this court. The appendix consisted of a copy of the docket entries in the district court and a copy of the magistrate's Order and Report-Recommendation. Thereafter, the Attorney General wrote the clerk of this court a short letter, the key paragraph of which was:

> This office has no record that defendants were ever served with the complaint, nor does the Record on Appeal contain any Marshall's affidavit of service. Defendants decline to waive their right to service of the complaint and will not defend this appeal (*Lewis v. State of New York,* 547 F.2d 4 [2d Cir.1976] ).

The appeal in due course came before this panel and was taken on submission upon the record as set forth above.

## II.

■ This court has only recently reaffirmed the principle that sua sponte dismissal of a pro se prisoner petition before service of process and the filing of a response by the state is strongly disfavored. See *Moorish Science Temple of America, Inc. and Bro. R. Smallwood-El v. Smith,* 693 F.2d 987, 989 (2d Cir.1982), and the cases

there cited. Dismissal of a prisoner's pro se complaint is warranted only when it appears that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Moreover, the complaint must be liberally construed, *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972), and the allegations taken as true, *Cooper v. Pate,* 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964).

■ With these principles in mind, it is clear that the district court acted prematurely. Putting to one side whether Bayron failed to allege any specific constitutional deprivations with regard to the disciplinary hearings,[1] the district court erred in dismissing on the record before it Bayron's allegations concerning intentional deprivation of property and reading of his legal papers. The magistrate concluded that these allegations were "not operative" merely because plaintiff did not repeat them in the last portion of his complaint labelled "Statement of Claim." However, the earlier allegations appeared under a printed heading on the form supplied to plaintiff that was also entitled "Statement of Claim." In addition, these allegations were recounted in great detail and at some length. The magistrate and the district judge gave much too technical a reading to a pro se prisoner's complaint, particularly when the "nonoperative" allegations do make out a claim under § 1983. There are numerous cases holding that similar allegations regarding intentional confiscation or destruction of a prisoner's property without justification or explanation state a § 1983 claim.[2] And there are also cases protecting a prisoner's right to access to the courts and to privacy in legal correspondence.[3] It may

---

1. As to this, it appears that the magistrate and the district court were correct.

2. E.g., *Ferranti v. Moran,* 618 F.2d 888, 891 (1st Cir.1980) (radio); *Jensen v. Klecker,* 599 F.2d 243, 245 (8th Cir.1979) (per curiam) (prison scrip); *Alexanian v. New York State Urban Development Corp.,* 554 F.2d 15, 17 (2d Cir. 1977) (per curiam) (money and personal pos-

sessions); *Kimbrough v. O'Neil,* 545 F.2d 1059, 1061 (7th Cir.1976) (in banc) (diamond ring).

3. E.g., *Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977) ("the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing ... adequate law libraries or adequate assistance ....");

be that the officers had sufficient reason to take or destroy Bayron's property and to examine the documents in his cell, assuming as we must that the officers did what Bayron charges. But we cannot know that on the state of this record, and more importantly, neither could the district court nor the magistrate.

Indeed, we are dismayed to find ourselves again in the very position we deplored in *Lewis v. State of New York,* cited in the letter to us from the Attorney General. We there pointed out in a case also alleging confiscation of a prisoner's property:

> Untimely dismissal may prove wasteful of the court's limited resources rather than expeditious, for it often leads to a shuttling of the lawsuit between the district and appellate courts. The undesirable consequences of premature dismissal are amply illustrated by the awkward posture this case presents on appeal. [Appellant], having had his action dismissed for failure to state a claim, asks us to rule on the sufficiency of his complaint. The State of New York and the other defendants, however, refuse to defend the propriety of [the judge's] order. They have never been made parties to the action, and decline to waive their right to service. Accordingly, they have not briefed the question of the sufficiency of [appellant's] complaint. We are confronted, therefore, with a controversy where the defendants refuse to participate because they are not parties, and to resolve it at this stage and under these circumstances would be unnecessary and wasteful.

547 F.2d at 6 (footnotes omitted). We realize that pro se petitions from prisoners are numerous in the Northern District and are burdensome, but it still would have been better to serve process on defendants and require a response, as suggested in *Lewis*

---

*Procunier v. Martinez,* 416 U.S. 396, 419–22, 94 S.Ct. 1800, 1814–15, 40 L.Ed.2d 224 (1974) (reasonable access to assistance of attorneys necessary to protect prisoners' right of access to courts); *Wilkinson v. Skinner,* 462 F.2d 670 (2d Cir.1972) (regulation forbidding examination or censorship of correspondence between prisoner

and in later opinions making the same point. See, e.g., *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983); *Fries v. Barnes,* 618 F.2d 988, 989 (2d Cir.1980); *Ron v. Wilkinson,* 565 F.2d 1254, 1258–59 (2d Cir. 1977). See also Comment, *State Prisoners, Federal Courts, and Playing by the Rules: An Analysis of the Aldisert Committee's* Recommended Procedures for Handling Prisoner Civil Rights Cases, 5 U. Puget Sound L.Rev. 131, 146–49 (1981).

We reverse and remand for further proceedings consistent with this opinion.

---

and counsel adequately protects right to assistance of counsel); *Corby v. Conboy,* 457 F.2d 251 (2d Cir.1972) (prison authorities may not place burdens on prisoners' constitutional right of access to courts, e.g., by confiscating legal books).