Benny WILLIAMS, Plaintiff-Appellant,

v.

Robert KULLMAN and Robert Abrams, Attorney General, State of New York, Defendants-Appellees.

No. 148, Docket 83-2083.

United States Court of Appeals, Second Circuit.

Submitted Aug. 30, 1983.

Decided Nov. 28, 1983.

David Seth Michaels, New York City, for plaintiff-appellant.

Robert Abrams, Atty. Gen. of the State of N.Y., New York City (Melvyn R. Leventhal, Deputy First Asst. Atty. Gen., Chief of Litigation Bureau, Gerald Ryan and Joyce Andren, Asst. Attys. Gen., New York City, of counsel), for defendants-appellees.

Before KEARSE, CARDAMONE and WINTER, Circuit Judges.

CARDAMONE, Circuit Judge:

Petitioner Benny Williams appeals from an order of the United States District Court for the Southern District of New York, Whitman Knapp, *Judge,* dismissing *sua sponte* petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Williams was convicted of burglary in the second degree and attempted robbery in the second degree, following a jury trial in New York State Supreme Court, and he was sentenced to concurrent prison terms of four to eight years and two and one-half to five years. It is from his detention under this sentence that petitioner seeks relief.

After examining the habeas petition in light of Rule 4 of the Rules Governing Section 2254 Cases, we disagree with the district court's conclusion that Williams' application was deficient on it face and thus find that *sua sponte* dismissal was inappropriate. Nonetheless, after reviewing the record, it is our view that petitioner's application for a writ of habeas corpus should be dismissed on the merits.

I

Shortly after midnight on October 23, 1979 Redzo Kukic, the resident superintendent of an apartment building at 878 West End Avenue in New York City, heard the buzzer to his apartment. Upon opening his door to see who was in the vestibule, he saw the petitioner, Benny Williams, pressing the buzzer and pushing against the locked inner door. Kukic told Williams to leave the building, and, when Williams refused, Kukic went to call the police.

While Kukic was calling the police, Elizabeth Reed arrived at the apartment building, where she was a resident, and encoun-

tered petitioner. Williams asked Miss Reed if she knew a person named Hall who lived on the tenth floor, and Reed told him that she did not. Miss Reed then opened the locked security door, proceeded into the lobby and stepped into the elevator. Williams followed her. According to Miss Reed's testimony at Williams' trial, once the elevator doors closed Williams hit her several times in the face and "said something about money," although she could not recall the precise words. Reed told him that she had no money, and Williams responded by threatening to kill her if she screamed. At that moment, the elevator doors opened on the tenth floor and Miss Reed ran out, screaming for help as she was being pursued by Williams. Several of the tenth floor tenants heard her scream and observed her running toward the stairwell with Williams chasing her. One tenant called the police while two others followed the young woman and her assailant into the stairwell and down the stairs.

Moments later Police Officer Norman Lamster arrived at the scene. The first thing he saw was Miss Reed running out of the building with blood dripping from her nose. She told the officer that she was being chased, so Lamster proceeded directly into the apartment building where he spotted petitioner. In the presence of Reed and several other witnesses, Officer Lamster arrested him.

Following a jury trial in State Supreme Court, New York County, Williams was convicted of second degree burglary and second degree attempted robbery. The Appellate Division, First Department, unanimously affirmed the conviction, and the New York Court of Appeals subsequently denied petitioner leave to appeal. Williams then sought federal habeas relief under 28 U.S.C. § 2254 by filing with the district court his *pro se* petition dated December 29, 1982. His application recited four grounds for relief, only one of which was of constitutional dimension:

> The people failed to prove beyond a reasonable doubt, as a matter of law, that petitioner specifically intended to commit

a larceny as charged under the first and second counts of the indictment and failed to prove beyond a reasonable doubt and as a matter of law, that petitioner specifically intended to commit a robbery under the third count of the indictment.

Pursuant to Rule 4 of the Rules Governing Section 2254 Cases, Judge Knapp of the Southern District entered an order dismissing the petition on March 1, 1983. The order did not require service of the petition on the State, nor did it require the State to file an answer. Instead, with respect to the lone constitutional claim, the district court held merely that petitioner did "no more than make a conclusory statement with no factual support." Later, on March 14, 1983, the district judge granted a certificate of probable cause for appeal as required by Fed.R.App.P. 22(b).[1]

## II

■ Rule 4 of the Rules Governing Section 2254 Cases provides for preliminary consideration of habeas petitions by district court judges. In pertinent part, the rule states "[i]f it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal ...." Given the increasing number of *pro se* petitions filed each year—many of which are inartfully drafted—we can appreciate a busy district judge's possible predilection toward summary dismissal. Nevertheless, Rule 4 does not confer unbridled discretion to dispose of all such habeas applications *sua sponte*. Summary dismissal is appropriate only in those cases where the pleadings indicate that petitioner can prove no set of facts to support a claim entitling him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

In *Ron v. Wilkinson,* 565 F.2d 1254 (2d Cir.1977), we gave the pleading requirement of Rule 4 a liberal construction. Spe-cifically, our holding emphasized that district courts should not summarily dismiss prisoner petitions containing sufficient allegations of constitutional violations. *Id.* at 1258–59. *See Moorish Science Temple of America, Inc. v. Smith,* 693 F.2d 987, 989–90 (2d Cir.1982) (*sua sponte* dismissal of *pro se* prisoner petition before service of process and filing of a response by the state is strongly disfavored). Requiring a responsive pleading is far from a mindless formality preceding a predictable outcome. It brings the disputed issues to the court's attention and quickly reveals whether there is any substance to the petitioner's claim for relief.

■ Moreover, due to the *pro se* petitioner's general lack of expertise, courts should review habeas petitions with a lenient eye, allowing borderline cases to proceed. *See* Recommended Procedures for Handling Prisoner Civil Rights Cases in the Federal Courts, Tentative Report No. 2, Part IV, Section D at 57 (Federal Judicial Center, 1977). These views are wholly consistent with Supreme Court doctrine, which confirms that *pro se* complaints must be liberally construed, *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–596, 30 L.Ed.2d 652 (1972) (per curiam), and their allegations accepted as true, *Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1733, 1733, 12 L.Ed.2d 1030 (1964) (per curiam). *See Bayron v. Trudeau,* 702 F.2d 43, 45 (2d Cir. 1983). The justification for this policy is apparent. If the writ of habeas corpus is to continue to have meaningful purpose, it must be accessible not only to those with a strong legal background or the financial means to retain counsel, but also to the mass of uneducated, unrepresented prisoners. *See generally Developments in the Law—Federal Habeas Corpus,* 83 Harv.L. Rev. 1038, 1173–78 (1970).

The impediments to the *pro se* petitioner are even more pronounced where, as here, he must prove a "negative", i.e., show that

---

[1]. It is interesting to note here, as we noted in *Alexander v. Harris,* 595 F.2d 87, 91 (2d Cir. 1979), that "it will be the rare case in which the district court judge issues the certificate of probable cause to appeal after he dismisses the petition under the third sentence of Rule 4 .... Indeed, a finding of probable cause to appeal would seem to be inconsistent with a summary dismissal...."

the government *failed to do* something it was required to do, rather than a "positive", i.e., show that the government *did something* it was prohibited from doing. Williams alleged that the State failed to prove beyond a reasonable doubt his specific intent to commit the crimes charged. No doubt he could have attempted to supply factual support for this claim by reciting everything the State did prove and then arguing that the total proof presented was insufficient to establish specific intent. Yet, it is unlikely that this type of factual recitation, assuming petitioner could accurately recall the record, actually would provide substantial guidance to the district judge in assessing the merits of a petition. Moreover, in light of the liberal pleading rules and policies, it would be unreasonable to require such specificity from a prisoner petitioner. For that reason the Supreme Court held, "it is clear that a state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt has stated a federal constitutional claim." *Jackson v. Virginia,* 443 U.S. 307, 321, 99 S.Ct. 2781, 2790, 61 L.Ed.2d 560 (1979) (citing *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)). Similarly, this Court has recognized that the inclusion in the habeas petition of comparably broad language adequately states a constitutional claim. *See, e.g., LaBruna v. U.S. Marshal,* 665 F.2d 439, 441 (2d Cir. 1981) ("no 'rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt' "). Plainly, petitioner's constitutional claim was not insufficient on its face and should not, therefore, have been dismissed *sua sponte.*

### III

■ Despite our firm conviction that the pleading requirements in habeas proceedings should not be overly technical and stringent, it would be unwise to saddle district judges with the burden of reading through voluminous records and transcripts in every case. As the First Circuit stated, "[h]abeas corpus is a special proceeding to right wrongs, not a routine procedure to search for them . . . ." *Bernier v. Moore,* 441 F.2d 395, 396 (1st Cir.1971) (per curiam). *See Aubut v. Maine,* 431 F.2d 688, 689 (1st Cir.1970). With respect to this same problem, Justice Jackson once observed that "he who must search a haystack for a needle is likely to end up with the attitude that the needle is not worth the search." *Brown v. Allen,* 344 U.S. 443, 537, 73 S.Ct. 397, 425, 97 L.Ed. 469 (1953) (concurring opinion). Such comments arise from a concern that the Great Writ, designed to protect the rights of individuals unlawfully detained, has through its expanded use been stretched far beyond any justifiable purpose, thus losing some of its vitality. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 275, 93 S.Ct. 2041, 2072, 36 L.Ed.2d 854 (1972) (Powell, J., concurring).

■ Thus district courts face a dilemma: the liberal pleading rules require careful scrutiny of habeas petitions; yet, such sensitive treatment entails increasingly significant efforts in terms of judicial time. *See Engle v. Isaac,* 456 U.S. 107, 126–28, 102 S.Ct. 1558, 1570–1571, 71 L.Ed.2d 783 (1982). Fortunately, there is a middle ground between an overly liberal allowance of the writ on the one hand and *sua sponte* dismissal on the other. *Cf. Cameron v. Fogarty,* 705 F.2d 676, 678 (2d Cir.1983) (alternatives to *sua sponte* dismissal of a 42 U.S.C. § 1983 complaint under *in forma pauperis* screening procedure). For example, the district judge may return an insufficient petition to the petitioner, together with a statement of a reason for its return, as prescribed by Rule 2(e) of the Rules Governing Section 2254 Cases. Alternatively, pursuant to Rule 7, he may order the petitioner or the State to expand the record. Perhaps, in the instant case, the district court's best option would have been to require the State to file an answer in accordance with Rule 5. If the court had done so, it would have been a relatively simple matter for the State to point to those pages in the trial transcript that contained evidence on the issue of Williams' specific intent to commit larceny and robbery. With this salient information before him, the judge would then have been able to make an

**1052**

informed decision on the merits, without having to search the trial transcript himself.

## IV

After petitioner was granted a certificate of probable cause for appeal, this Court appointed counsel to represent him and requested the State to forward the record. Since we now have before us a complete record of the state court proceedings as well as briefs from both parties, we are in a position to undertake a *de novo* review of Williams' petition. As noted, Williams asserts that the State failed to prove beyond a reasonable doubt his specific intent to commit a burglary and robbery. We conclude that "after viewing the evidence in the light most favorable to the prosecution, [a] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

On appeal before the state courts, Williams contended that his attack on Miss Reed was as consistent with an intent to commit an assault or a prohibited sexual contact as it was with an intent to steal money. Yet, the testimony of Miss Reed and the circumstances of the encounter are clearly sufficient to support the jury's verdict. Uncontradicted evidence indicates that Williams unlawfully entered the building after being told to leave, followed Miss Reed into the elevator where he hit her repeatedly and chased her down ten flights of stairs. Significantly, Miss Reed testified respecting the events in the elevator that the appellant "grabbed me and hit me a few times in the face and at that point said something about money .... I said that I didn't have any .... I think it was a demand for money, the words I don't remember."

Petitioner's argument that he was merely assaulting Miss Reed or otherwise attempting to procure sexual favors for money is, at best, an alternative theory of intent, and the question of which theory to accept is one that ultimately rested with the jury. Here, the court properly instructed the jury to determine whether the evidence established beyond a reasonable doubt that Williams intended to steal money, and we believe the evidence supports the jury's finding that he did. Based upon that conclusion, which is supported by the record, it is now clear that the petition states no claim entitling petitioner to relief. Thus, the order of dismissal is affirmed.