UNITED STATES of America ex rel.
Justo RICHARDS, Petitioner,

v.

George BARTLETT, Superintendent,
Elmira Correctional Facility,
Respondent.

No. CV–90–3947.

United States District Court,
E.D. New York.

Aug. 13, 1993.

Justo Richards, pro se.

Ann Bordley, Asst. Dist. Atty., Brooklyn, NY, for respondent.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

*Pro se* petitioner Justo Richards seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition is denied in its entirety.

## FACTS

On February 1, 1979, two men confronted Michael Thompson and his girlfriend, Lorraine Walker, at gunpoint. The men took Thompson's wallet, chains, and keys and drove away in his 1976 Cadillac. (Tr. at 16–22.)[1] On February 27, 1979, Police Officer Maureen Dickenson stopped a 1976 Cadillac

---

1. "Tr." refers to the transcript of the state court proceedings.

driven by petitioner. After noticing that petitioner's driver renewal stub, the car's registration, and the license plates did not match, Officer Dickenson asked petitioner to accompany her to the station house for proper identification. (Tr. at 69–72.) At the station house, Officer Dickenson performed a VIN computer check and ascertained that the car had been stolen. (Tr. at 73.) Petitioner was held in custody while Thompson and Walker were contacted. When they came to the precinct, Thompson and Walker immediately recognized and identified petitioner as the man who had robbed them at gunpoint. (Tr. 24–26.)

Petitioner was initially represented by Barry Goldstein. Goldstein was subsequently replaced with Michael Macklowitz. On February 25, 1981, before the jurors were sworn, Macklowitz was replaced by Jay Horlick. On the same day, petitioner walked out of the courtroom for a lunch break and failed to return. The trial was continued *in absentia*, and the jury convicted petitioner of robbery in the first degree, N.Y. Penal Law § 160.15(4) (McKinney 1988), and criminal possession of stolen property in the first degree, N.Y. Penal Law § 165.50 (McKinney 1975).[2]

Petitioner was sentenced on December 18, 1981 to concurrent terms of imprisonment of six to eighteen years on the robbery charge and six years on the criminal possession charge. Thereafter, petitioner brought three motions to vacate judgment and two applications for writs of habeas corpus in state court. These motions and applications were denied. On March 3, 1986, his conviction was affirmed by the Appellate Division, Second Department, *People v. Richards*, 118 A.D.2d 604, 499 N.Y.S.2d 209 (2d Dep't 1986), and leave to appeal to the New York Court of Appeals was denied on May 9, 1986. *People v. Richards*, 67 N.Y.2d 1056, 504 N.Y.S.2d 1032, 495 N.E.2d 365 (1986).

By petition dated June 1, 1986, petitioner sought a writ of habeas corpus from the United States District Court for the Southern District of New York. *Richards v. Scully*, No. 86–8078 (S.D.N.Y.1986) (Ward, J.). In that petition, he claimed that (1) his indictment was defective because it charged armed robbery but failed to charge separately possession of a weapon, an essential element of the crime of armed robbery; (2) he was selectively prosecuted and evidence was not preserved because the car and registration were returned to Thompson without a court order; (3) he received ineffective assistance of counsel; and (4) he was subjected to multiple punishments because both of his convictions were based on the same stolen property.

After respondent replied to petitioner's application, petitioner submitted a "Traverse" dated April 13, 1987, in which petitioner expanded on the claims in his petition. In addition, petitioner raised new claims under the headings "Denial of Due Process," "Denial of Equal Protection," and "Prejudice." In these sections, petitioner claimed that: (1) he was denied due process because the New York State Board of Parole improperly used the uncharged crime of possession of a weapon in his parole determination; (2) he was denied equal protection because he was not provided with a transcript to prepare his *pro se* supplemental brief for his state appeal; and (3) he was prejudiced by a 51 month delay in the state appellate process.

Petitioner discussed his initial claims under the headings "Ground I: Defective Indictment," "Ground II: Selective Prosecution," "Ground III: Multiple Punishments," and "Ground IV: Ineffective Assistance of Counsel." Intermingled with these claims, petitioner touched upon claims that: (1) at trial, the prosecutor led witnesses and changed facts and circumstances; (2) the prosecutor intentionally withheld evidence; (3) attorney Macklowitz was associated with the District Attorney's Office and had a conflict of interest; and (4) the in-court witness identifications were unnecessarily suggestive.

By order dated June 23, 1987, petitioner's application was transferred to this Court.

---

2. In 1986, N.Y. Penal Law § 165.50 was amended to substitute references to third degree for references to first degree and to increase the value of stolen property from $1500 to $3000. The current version of the statute is criminal possession of stolen property in the third degree, N.Y. Penal Law § 165.50 (McKinney 1988).

On November 12, 1987, this Court denied the petition on the merits but did not address the additional grounds raised in the "Traverse." *Richards v. Scully,* No. 87–2230, 1987 WL 25896 (E.D.N.Y. Nov. 12, 1987) (Costantino, J.).

Subsequently, on November 30, 1987, petitioner filed a motion for reconsideration.[3] In his motion, petitioner renewed his claim that he had been denied equal protection because he had not received a transcript to prepare his *pro se* supplemental brief for his state appeal. He also made several references in his motion to his "Traverse" and some of the other grounds raised in that document.

By letter dated July 4, 1988, petitioner notified the district court that no action had been taken on his motion. In response to petitioner's letter, the *pro se* clerk sent petitioner a copy of his docket sheet and informed him that his case was closed. (Letter from *Pro se* Clerk to Petitioner dated July 11, 1988.) Shortly thereafter, on August 11, 1988, Judge Costantino ordered that judgment be entered in petitioner's case. The Clerk of the Court entered judgment on August 15, 1988.

Soon after petitioner wrote his letter, on July 13, 1988, he applied to the Second Circuit for a writ of mandamus or prohibition. Three days later, on July 16, 1988, petitioner filed a notice of appeal and an application for a certificate of probable cause with the circuit court. Petitioner asked the circuit court to review the district court's denial of his petition and apprised that court of the district court's inaction regarding his motion for reconsideration.

The district court issued a denial of a certificate of probable cause on July 26, 1988. Petitioner then filed a second notice of appeal with the Second Circuit on August 26, 1988.

The Second Circuit denied petitioner's application for a certificate of probable cause on January 11, 1989, *Richards v. Scully,* No. 88–2335 (2d Cir.1989), and denied his application for a writ of mandamus on February 9, 1989. *In re Richards,* No. 88–3043 (2d Cir.1989).

Petitioner's application for a writ of certiorari was denied on April 24, 1989. *Richards v. New York,* 490 U.S. 1038, 109 S.Ct. 1940, 104 L.Ed.2d 411 (1989).

In the current petition, dated November 13, 1990, petitioner seeks a writ of habeas corpus on the grounds that: (1) the prosecutor intentionally withheld exculpatory evidence; (2) petitioner's defense counsel had a conflict of interest because he was also an Assistant District Attorney; (3) he received ineffective assistance of counsel; (4) the in-court witness identifications were unnecessarily suggestive; (5) his trial was unfair because of trial court bias and prosecutorial misconduct; (6) petitioner was subjected to multiple punishments; (7) the trial court lacked jurisdiction because the indictment was defective; (8) the New York State Board of Parole improperly used the uncharged crime of possession of a weapon in their parole determination; and (9) he was denied equal protection because he was not provided a free transcript to prepare his *pro se* supplemental brief for his state appeal.

## DISCUSSION

Rule 9(b) of the Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Rule 9(b)") states:

*Successive petitions.* A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.

Grounds three, six, and seven of the present petition were denied on the merits in petitioner's previous application. *Richards v. Scully,* No. 87–2230, 1987 WL 25896 (E.D.N.Y. Nov. 12, 1987) (Costantino, J.). These grounds, therefore, are dismissed under the first clause of Habeas Rule 9(b).

■ The remaining grounds in the present petition were raised in petitioner's "Tra-

---

**3.** Petitioner labeled this motion as a "combined motion for relief from the prior order, objections on constitutional grounds, and reconsideration."

verse" but were not addressed by Judge Costantino in his memorandum and order denying petitioner's habeas application.[4] Since these grounds were previously available to petitioner, the state argues that the present petition should be dismissed as an abuse of the writ under the second clause of Habeas Rule 9(b). The state argues that petitioner was obligated to raise *all* of his claims in his initial petition, that the "Traverse" was an inappropriate vehicle to raise new claims, and that it amounted to a subsequent petition.

■ The standard for abuse of the writ of habeas corpus is an inexcusable neglect standard. *McCleskey v. Zant*, 499 U.S. 467, ——, 111 S.Ct. 1454, 1468, 113 L.Ed.2d 517 (1991). In *McCleskey*, the Supreme Court held that "[a]buse of the writ is not confined to instances of deliberate abandonment.... [A] petitioner may abuse the writ by failing to raise a claim through inexcusable neglect."

---

**4.** Although Judge Costantino never explicitly addressed petitioner's "Traverse" claims or motion for reconsideration, an argument may be made that both he and the court of appeals implicitly denied the claims contained in the "Traverse." Section 2253 makes clear that a certificate of probable cause may only be issued where a final order has been entered:

> In a habeas corpus proceeding before a circuit or district judge, *the final order* shall be subject to review, on appeal, by the court of appeals for the circuit where the proceeding is had.
> ....
> An appeal *may not* be taken to the court of appeals from the final order in a habeas corpus proceeding where the detention complained of arises out of process issued by a State court, unless the justice or judge who rendered the order or a circuit justice or judge issues a certificate of probable cause.

28 U.S.C. § 2253 (emphasis added). Furthermore, an order lacks finality if all claims in a habeas petition are not resolved. *Bermudez v. Smith*, 797 F.2d 108 (2d Cir.1986). Therefore, the denial of petitioner's applications for certificates of probable cause by both the district court and the court of appeals may be treated as an implicit denial of petitioner's motion for reconsideration; otherwise, if petitioner's motion were still pending, the courts would not have had the jurisdiction to entertain applications for certificates of probable cause to appeal. Since the motion for reconsideration contained references to petitioner's "Traverse," the implicit denial of the motion may also be viewed as an implicit denial of the claims raised in the "Traverse."

*Id.* 499 U.S. at —— – ——, 111 S.Ct. at 1467–68.

■ To excuse failure to raise a claim in an earlier petition, petitioner "must show cause for failing to raise it and prejudice therefrom." *Id.* 499 U.S. at ——, 111 S.Ct. at 1470. The cause standard requires the petitioner to show that "some objective factor external to the defense impeded [his] efforts to raise the claim." *Id.* For example, petitioner could show cause by showing interference by officials that prevented him from raising all his claims or by showing that the factual or legal basis for a claim was not reasonably available to petitioner in his earlier petition. *Id.* "If petitioner cannot show cause, the failure to raise the claim in an earlier petition may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim." *Id.* "Once the petitioner has established cause, he must show 'actual prejudice' from the errors of which he complains." *Id.* (citation omitted).[5]

---

Alternatively, after the *pro se* clerk received petitioner's letter regarding his motion for reconsideration, the clerk responded by informing petitioner that his case was closed. Shortly thereafter, Judge Costantino ordered that judgment be entered on the case. The order of judgment after petitioner's inquiry may also be viewed as an implicit denial of petitioner's motion and grounds raised in his "Traverse."

However, given the liberality with which *pro se* pleadings are treated (see discussion *infra* p. 699) and the lack of clarity concerning the prior determination, this Court treats the "Traverse" grounds as unaddressed by the prior proceedings.

**5.** With regard to procedure, *McCleskey* requires:

> When a prisoner files a second or subsequent application, the government bears the burden of pleading abuse of the writ. The government satisfies this burden if, with clarity and particularity, it notes petitioner's prior writ history, identifies the claims that appear for the first time, and alleges that petitioner has abused the writ. The burden to disprove abuse then becomes petitioner's.

*McCleskey*, 499 U.S. at ——, 111 S.Ct. at 1470. In this case, the government has met their burden in their affidavit, and petitioner has responded by filing a "Traverse to Return." In his current "Traverse," petitioner claims that he could not raise all of the grounds in his first petition because he lacked a transcript. In light of the discussion following, the merits of this argument need not be decided.

In the present case, given the liberal pleading standards and flexibility permitted *pro se* litigants, this Court finds it appropriate to address the three claims raised under the sections "Denial of Due Process," "Denial of Equal Protection," and "Prejudice," which, although raised in a belated and improper manner, were never addressed by the district court initially. *See Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (*pro se* pleading is not subjected to the same scrutiny as pleading drafted by attorney); *see also Merritt v. Florida*, 359 F.2d 793, 794 (5th Cir.1966) ("A letter from the appellant was properly treated by the district court as an amended petition.... [The] niceties of pleading are neither required nor expected of pro se applicants for post conviction relief...."); *Williams v. Lockhart*, 772 F.2d 475, 480 (8th Cir.1985) ("Although this [additional] claim was not raised in the initial pleading, it was addressed in later filings in detail. Given that Williams was proceeding pro se, his later filings should be treated as amending the pleadings."). Since these three claims were clearly presented but were not addressed, renewal of these claims in the present petition does not constitute an abuse of the writ.

■ However, with respect to the claims intermingled with petitioner's original claims, this Court believes that petitioner had the opportunity to raise them previously but did not do so properly. Although it is clear in hindsight that these claims were available to petitioner, it is not clear that the district court was sufficiently alerted to the presence of these additional grounds for relief. As the Second Circuit has observed,

[H]abeas corpus is a special proceeding to right wrongs, not a routine procedure to search for them.... With respect to this same problem, Justice Jackson once observed that "he who must search a haystack for a needle is likely to end up with the attitude that the needle is not worth the search."

*Williams v. Kullman*, 722 F.2d 1048 (2d Cir.1983) (quoting *Bernier v. Moore*, 441 F.2d 395, 396 (1st Cir.1971) and *Brown v. Allen*, 344 U.S. 443, 537, 73 S.Ct. 397, 425, 97 L.Ed. 469 (1953)).

Viewed in the best light possible, petitioner's failure clearly to present these claims by burying them in his discussion of his original claims constitutes inexcusable neglect under *McCleskey*. Viewed less generously, petitioner's actions rise to the level of a deliberate attempt to withhold these grounds from the court's consideration. In *Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), the Supreme Court noted:

[I]f a prisoner deliberately withholds one of two grounds for federal collateral relief at the time of filing his first application, in the hope of being granted two hearings rather than one or for some other such reason, he may be deemed to have waived his right to a hearing on a second application presenting the withheld ground.... Nothing in the traditions of habeas corpus requires the federal courts to tolerate needless piecemeal litigation, or to entertain collateral proceedings whose only purpose is to vex, harass, or delay.

*Sanders*, 373 U.S. at 18, 83 S.Ct. at 1078 (cited with approval in Advisory Committee Notes following Habeas Rule 9). Therefore, the renewal of these claims (claims (1), (2), (4), and (5) in the present petition) are deemed to be an abuse of the writ, and they are dismissed.[6]

This Court now turns to the merits of petitioner's due process, equal protection, and prejudice claims.[7] First, petitioner claims that the New York State Board of Parole improperly used an uncharged crime of possession of a weapon in its parole determination. This claim is meritless because petitioner was convicted of robbery in the first degree, N.Y. Penal Law § 160.15(4) (McKinney 1988), which provides that a person is guilty of such a crime if he "[d]isplays

6. Petitioner has also submitted a "Traverse to Return" in this petition. After reviewing this "Traverse," this Court finds that petitioner raises no new grounds in addition to those he has raised in his petition.

7. Although petitioner does not renew his prejudice claim in the present petition, it will be addressed because this Court believes that it was overlooked previously.

what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm." *Id.* Therefore, the parole board properly considered the fact that a weapon was involved in petitioner's offense.

■ Petitioner next claims that he was denied equal protection because he was not provided with a transcript to prepare his *pro se* supplemental brief for his state appeal. In *Britt v. North Carolina,* 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971), Justice Marshall announced that:

> *Griffin v. Illinois* [351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) ] and its progeny establish the principle that the State must, as a matter of equal protection, provide indigent prisoners with the basic tools of an adequate defense or appeal, when those tools are available for a price to other prisoners. While the outer limits of that principle are not clear, there can be no doubt that the State must provide an indigent defendant with a transcript of prior proceedings when that transcript is needed for an effective defense or appeal.

404 U.S. at 227, 92 S.Ct. at 433 (footnote omitted).

Later cases have considered the "outer limits" of this principle. For example, in *Ross v. Moffitt,* 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974), the Supreme Court explained that:

> Despite the tendency of all rights to declare themselves absolute to their logical extreme, there are obviously limits beyond which the equal protection analysis may not be pressed without doing violence to principles recognized in other decisions of this court. The Fourteenth Amendment does not require absolute equality or precisely equal advantages, nor does it require the State to equalize economic conditions. It does require that the state appellate system be free of unreasoned distinctions, and that indigents have an adequate opportunity to present their claims fairly within the adversary system. The state cannot adopt procedures which leave an indigent defendant entirely cut off from any appeal at all, by virtue of his indigency, or extend to such indigent defendants merely a meaningless ritual while others in

better economic circumstances have a meaningful appeal. The question is not one of absolutes, but one of degrees.

417 U.S. at 611–612, 94 S.Ct. at 2444–2445 (footnotes, quotations, and citations omitted). In *Moffitt,* the Court limited an indigent's right to free counsel on appeal to the initial appeal as of right. The Court noted that after the first appeal, the defendant's need for counsel diminished since he had other means besides counsel to aid him in his review—such as a previous trial transcript, a brief on his behalf in the appellate court, and a previous appellate decision. *Id.* at 615, 94 S.Ct. at 2446. These means rendered the additional assistance of counsel unnecessary to obtain a meaningful review. *Id.*

As *Moffitt* makes clear, the unavailability of counsel or of a trial transcript is not a *per se* denial of equal protection. "The basic question is one of adequacy of [petitioner's] access to procedures for review of his conviction...." *United States v. MacCollom,* 426 U.S. 317, 326, 96 S.Ct. 2086, 2092, 48 L.Ed.2d 666 (1976). In this case, petitioner, like the defendant in *Moffitt,* was given a meaningful and effective opportunity for review. On his appeal, petitioner was assigned free counsel, and counsel submitted an adequate brief on petitioner's behalf in the state appellate court.

Furthermore, the adequacy of the review "must be decided in the light of avenues which [petitioner] chose not to follow as well as those he now seeks to widen." *MacCollom,* 426 U.S. at 326, 96 S.Ct. at 2092. As the appellate brief filed on petitioner's behalf shows, petitioner's counsel was provided with a copy of the trial transcript. In preparing his *pro se* brief, petitioner had the right to request counsel's assistance, to utilize counsel's appellate brief on his behalf, and to obtain access to counsel's copy of the transcript. There is no record, however, that petitioner attempted to avail himself of any of these opportunities or that he was denied the use of any of them. *Cf. Wade v. Wilson,* 396 U.S. 282, 286–87, 90 S.Ct. 501, 503–04, 24 L.Ed.2d 470 (1970) (refusing to decide whether state was constitutionally required to provide indigent prisoner with free trial tran-

script to prepare for habeas petition absent a showing that petitioner could not borrow copy from state authorities or his codefendant, or a showing that having his own copy would be significantly more advantageous than obtaining use of someone else's copy); *Stubbs v. Leonardo,* 973 F.2d 167, 168 (2d Cir.1992) (granting conditional writ of habeas corpus after Appellate Division relieved petitioner's appellate counsel without notifying petitioner and mailed copy of petitioner's transcript to prison from which he had transferred); *Herrera v. Senkowski,* No. CV–92–880, 1992 WL 373712, at *1–2 (E.D.N.Y. Nov. 9, 1992) (Hurley, J.) (granting conditional writ of habeas corpus after petitioner's correctional facility misplaced his transcript, he could not obtain reply from appellate counsel, and correctional facility withheld his letter to Appellate Division). Although it may have been helpful for petitioner to obtain a second copy of the transcript from the state, "the fact that a particular service might be of benefit to an indigent defendant does not mean that the service is constitutionally required." *Moffitt,* 417 U.S. at 618, 94 S.Ct. at 2439. Therefore, petitioner's equal protection claim is denied.

Lastly, petitioner claims that a 51 month delay in the appellate process prejudiced his review. With respect to this issue, the Second Circuit has stated that:

> Even where a habeas petitioner has demonstrated that his due process rights have been violated by a delay in the appellate process, we have not considered the delay, without more, to be a sufficient basis for release from custody but have expressly rejected the proposition that mere lapse of time is a sufficient basis for granting of habeas. We have ruled that some showing of prejudice *to the appeal* is necessary for habeas relief; such a petitioner is not entitled to unconditional release on account of delay in his appeal unless he can demonstrate that the appellate delay caused substantial prejudice to the disposition of his appeal. In defining substantial prejudice, we have stated that the petitioner must show a reasonable probability that, but for the delay, the result of the appeal would have been different.

*Elcock,* 947 F.2d 1004, 1008 (2d Cir.1991) (citations and quotations omitted). Petitioner has made no showing that, given a speedier disposition, there is any possibility that the outcome of his review would have differed. Therefore, petitioner's prejudice claim is denied.

### CONCLUSION

For the foregoing reasons, this petition for a writ of habeas corpus is denied in its entirety.

SO ORDERED.