**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 180056-U

Order filed September 18, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-18-0056 Circuit No. 09-CF-1973 |
| TYRONE L. HENDERSON, | ) ) ) | Honorable Carmen Julia Goodman, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE O'BRIEN delivered the judgment of the court.
Justices McDade and Schmidt concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:   The circuit court erred in summarily dismissing defendant's *pro se* postconviction petition because defendant set forth the gist of a claim of ineffective assistance of counsel.

¶ 2    Defendant, Tyrone L. Henderson, appeals the summary dismissal of his *pro se* postconviction petition. Defendant argues that the Will County circuit court erred in dismissing his petition at the first stage of postconviction proceedings because he set forth the gist of a constitutional claim of ineffective assistance of counsel. We reverse and remand.

¶ 3                                    I. BACKGROUND

¶ 4          Defendant was charged with two counts of first degree murder (720 ILCS 5/9-1(a)(1) (West 2008)). He was also charged with one count each of armed habitual criminal (*id.* § 24-1.7(a)(1)), criminal trespass to a residence (*id.* § 19-4(a)(2)), home invasion (*id.* § 12-11(a)(5)), and unlawful use of a weapon by a felon (UUWF) (*id.* § 24-1.1(a)). The charges stemmed from an incident that led to the death of Michael Amos. Defendant's sisters, Tasha and Tuesday Henderson, were also charged with criminal trespass to a residence.

¶ 5          Defendant, Tuesday, and Tasha were tried together in a joint jury trial. However, after the first day of the trial, the court granted a mistrial for Tasha and Tuesday. The court reasoned that the testimony of the first two witnesses could have led the jury to believe that Tasha and Tuesday were responsible for other offenses that they were not charged with. The court did not believe they could receive a fair trial.

¶ 6          We set forth a detailed recitation of the trial testimony in our decision in *People v. Henderson*, 2013 IL App (3d) 110272-U. We will briefly summarize the relevant facts. Gloria Pratt, Kewon Amos, Tia Johnson, Jonathan Fairley, and Robert Bouie testified as occurrence witnesses for the State. Their testimony established that Pratt, Kewon, Michael, and Tia lived at the residence where the incident occurred. Kewon and Michael were Pratt's sons, and Tia was Kewon's girlfriend. On the evening of the incident, Shantell Johnson, Tia's sister, was at the residence. Shantell and Michael got into an argument, and Shantell was asked to leave.

¶ 7          A few minutes after Shantell left, defendant entered the house with Tuesday and Tasha. Defendant was Shantell's boyfriend. Tia stated that she neither opened the door for defendant nor gave him permission to enter. Defendant asked Michael if he had touched Shantell inappropriately, and Michael said yes. Defendant indicated that he would be waiting outside for Michael, and

2

Kewon told defendant that he could talk to Kewon instead. Defendant hit Kewon, and Kewon grabbed defendant. They fell to the ground and began to wrestle.

¶ 8        Kewon testified that defendant pulled a gun out of his pocket. Fairley grabbed defendant from behind, and Kewon grabbed defendant's wrist. The gun went off while it was in defendant's hand. Defendant's finger was on the trigger, and no one else's hand was on the gun. Michael grabbed defendant from behind, and the gun went off again. Kewon could tell that Michael had been shot. Kewon left the room to retrieve a knife. When he returned, Michael was on top of defendant. Defendant was holding the gun, and Kewon heard a third shot. Kewon dropped the knife and tried to pry the gun out of defendant's hands.

¶ 9        Fairley saw defendant pull a gun out of his pants and fire a shot toward the ceiling. Fairley ran outside and heard several more gunshots. Pratt also saw a gun in defendant's hand during the incident. Defendant's finger was on the trigger.

¶ 10        Tia also saw a gun in defendant's hand during the altercation. At one point, Michael was on top of defendant. Michael was trying to stop defendant from raising the gun. Defendant was able to raise the gun, and he shot Michael in the back. No one else had a hand on the gun when defendant shot Michael.

¶ 11        Bouie testified that when he arrived at the house, Kewon, Michael, and defendant were piled on top of each other. Kewon told Bouie to get the gun, and Bouie took a gun from defendant's hands.

¶ 12        Defendant testified that on the day of the incident, he went to the house where the incident occurred after receiving a phone call from Shantell. Tasha and Tuesday accompanied him. Tia opened the door. Defendant entered the house and saw Kewon, Michael, and Fairley. Pratt also

3

walked into the room. Defendant told Michael they needed to go outside so that defendant could beat Michael.

¶ 13     Defendant put his hand on the door, and Kewon grabbed him around his waist with both arms. This caused defendant to collide with Michael. Defendant, Michael, and Kewon fell to the floor. Defendant punched at Kewon. Michael was face up on his back, and defendant was laying on top of both Michael and Kewon. Michael's legs were under defendant. Defendant heard a woman yell, "[H]e got a gun." Defendant then saw "Michael's hands coming away from up under him on his left side." Defendant saw that Michael had a gun. Defendant grabbed Michael's arm and pushed the gun toward Michael and away from defendant. Defendant's finger was never on the trigger.

¶ 14     Kewon and Fairley were standing over defendant hitting him. Defendant struggled for the gun. The barrel was pointed at Michael, but Michael still had the grip of the gun. Defendant stated that Michael's finger must have been on the trigger. Defendant yanked the gun and heard two gunshots. Defendant and Michael continued wrestling for the gun. Defendant was laying on the floor, and Michael was on top of him. Kewon tried to hit defendant in the face with a machete. Defendant rolled, and Kewon struck Michael in the back with the machete. Defendant and Michael were still wrestling for the gun, but defendant felt Michael's grip loosen. Kewon then struck defendant on his leg with the machete. Kewon dropped the machete, and defendant grabbed the gun from Michael. Kewon grabbed defendant's hand, and Michael grabbed defendant's arm. The gun did not discharge while defendant was holding it, and defendant did not put his finger on the trigger. Bouie entered the house and grabbed the gun. Defendant got up and ran out the front door.

¶ 15     The jury found defendant guilty of all charges. The court sentenced defendant to 45 years' imprisonment for first degree murder, 6 years' imprisonment for armed habitual criminal, 3 years'

4

imprisonment for criminal trespass to a residence, 6 years' imprisonment for home invasion, and 6 years' imprisonment for UUWF. Defendant's sentences for armed habitual criminal, criminal trespass to a residence, home invasion, and UUWF were to run concurrently with one another but consecutively to his sentence for first degree murder.

¶ 16    On direct appeal, we vacated defendant's convictions for criminal trespass to residence and UUWF on one-act, one-crime principles. *Henderson*, 2013 IL App (3d) 110272-U, ¶ 71. We affirmed defendant's other convictions and sentences. *Id.*

¶ 17    On May 22, 2017, defendant filed a *pro se* postconviction petition.[1] In the petition, defendant argued, among other things, that his trial counsel provided ineffective assistance in failing to secure and interview Tasha and Tuesday as witnesses. Defendant argued that Tasha and Tuesday could have contradicted the State's case and corroborated his theory of defense. Defendant argued that there was a reasonable probability that the result of the proceeding would have been different but for counsel's deficient performance. Defendant contended that Tasha and Tuesday's testimony would have supported an uncorroborated defense.

¶ 18    Defendant attached Tasha's affidavit. Tasha stated that she was under the impression that defendant's attorney needed her to testify at the trial, but she was never questioned or asked to give a statement. Tasha stated that if she were called to testify, she would have said that she entered the house where the incident occurred with defendant. A fight broke out between defendant, Kewon, and Michael. She heard Tia tell Michael to shoot defendant. Tuesday then warned defendant that Michael had a gun. Tasha saw defendant and Michael struggle over a gun. They had their hands on the gun and were pointing it in the air. Michael slipped and landed on his knees.

---

[1]Defendant titled this document "Petition for An [*sic*] Successive Post-Conviction Relief." However, it was the first postconviction petition he had filed, so defendant and the court agreed that it would be treated as an initial postconviction petition.

At that point, defendant and Kewon had possession of the gun. The gun was pointed in the air or at the ceiling. Defendant looked over his shoulder to dodge a blow from Fairley. The gun discharged and seemed to hit Michael in the shoulder area. Approximately 5 to 10 seconds later, two more shots were discharged and hit Michael. Michael and defendant both had their hands on the gun when it went off the second time. Michael was still fighting for control of the gun after he was shot. However, Tasha could tell that Michael was wounded because he had "less willpower to fight." Tuesday threw a television at Kewon as he was choking defendant. Kewon threatened to kill defendant and got a machete. He swung it toward defendant. Tasha was scared and left the room. Tasha, Tuesday, and defendant left the house shortly after that.

¶ 19    Tuesday's affidavit was also attached to the petition. Tuesday stated that she was prepared to testify even though the judge ordered a mistrial as to her and Tasha. Tuesday was never interviewed by defendant's attorney and never testified. Tuesday averred that if she had been called to testify, she would have testified that she went to the house with defendant and Tasha on the day of the incident. Defendant went inside to talk to Michael. Tuesday entered the house and heard defendant arguing with Michael and Kewon. Kewon grabbed defendant and tried to wrestle him to the floor. Defendant hit Kewon and knocked him off balance. Tia told Michael to "pop his ass." Michael pulled out a handgun from his pants. Tuesday told defendant to watch out. Defendant grabbed for Michael's hand. Defendant, Michael, and Kewon wrestled for control of the gun. Tuesday began fighting with Tia, and she heard three gunshots. Tuesday turned and saw that Kewon had his hands around defendant's throat. Tuesday hit Kewon with a television. Kewon yelled that Michael had been shot and that he was going to kill defendant. Kewon ran out of the room and returned with a machete. Tuesday, Tasha, and defendant then left.

¶ 20    The court summarily dismissed the petition, finding that it was frivolous and patently without merit.

¶ 21    Defendant filed a "Petition for Rehearing" asking the court to reconsider its decision. The court treated this as a motion to reconsider. Defendant then filed a motion to supplement his "Petition for Rehearing." In the motion, defendant alleged that he had recently learned that Shantell was willing to testify at his trial but was never interviewed by defense counsel.

¶ 22    Defendant later filed Shantell's affidavit. In the affidavit, Shantell averred that she was prepared to testify but was never contacted by defendant's trial attorney. Shantell stated that she would have testified that defendant was wearing a thin T-shirt when he arrived at the house, and he could not have possibly concealed a gun. Earlier that evening, Shantell noticed a bulge in the back of Michael's pants. During the confrontation between Michael and defendant, Shantell noticed the bulge was gone, and a gun was in Michael's hand. Defendant struggled to control the gun, and "that eventually caused Michael Amos's death." Shantell did not witness the actual shooting.

¶ 23    Following a hearing, the court denied the "Petition for Rehearing."

¶ 24                                    II. ANALYSIS

¶ 25    Defendant argues that the court erred in dismissing his *pro se* postconviction petition at the first stage of proceedings because he presented the gist of a claim that his trial counsel was ineffective for failing to investigate or call Tasha, Tuesday, and Shantell as witnesses. We find that defendant has set forth an arguable claim of ineffective assistance of counsel.

¶ 26    At the first stage of postconviction proceedings, the circuit court must independently review the petition within 90 days of its filing. 725 ILCS 5/122-2.1(a) (West 2016). The court shall dismiss the petition if it deems it to be frivolous or patently without merit. *Id.* § 122-2.1(a)(2). A

petition "may be summarily dismissed as frivolous or patently without merit only if the petition has no arguable basis either in law or in fact." *People v. Hodges*, 234 Ill. 2d 1, 11-12 (2009). To survive first-stage dismissal, a petition need only meet the low threshold of presenting the gist of a constitutional claim. *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). "Where defendants are acting *pro se*, courts should review their petitions 'with a lenient eye, allowing borderline cases to proceed.' " *Hodges*, 234 Ill. 2d at 21 (quoting *Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983)). At the first stage, "a petition alleging ineffective assistance may not be summarily dismissed if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." *Id.* at 17.

¶ 27        Here, it is arguable that trial counsel's performance fell below an objective standard of reasonableness where counsel allegedly failed to interview Tasha, Tuesday, and Shantell, and failed to call them as witnesses. Tasha, Tuesday, and Shantell indicated in their affidavits that they were willing to testify but were never contacted by the defense or called as witnesses. Their potential testimony, as set forth in their affidavits, would have corroborated defendant's version of events and contradicted the testimony of State witnesses in several ways. Tasha's proposed testimony would have corroborated defendant's testimony that the gun discharged when he and Michael were struggling for control of it. Shantell also stated that there was a struggle over the gun, though she did not witness the shooting. Tuesday's proposed testimony could have corroborated defendant's testimony that Kewon was the initial aggressor and that Michael was the one who pulled out the gun during the altercation. Shantell's proposed testimony that she saw a bulge in the back of Michael's pants earlier in the evening and that it was gone when she saw the gun in his hands would have been consistent with defendant's testimony that Michael was the one who pulled out a gun during the incident. The testimony of these witnesses—especially Tasha and

8

Tuesday—would have contradicted the testimony of the State's witnesses that defendant was the initial aggressor, defendant was the one who brought a gun, and defendant was the only person whose hands were on the gun when it was fired.

¶ 28        It is also arguable that defendant was prejudiced by trial counsel's failure to call these witnesses. That is, it is arguable that the result of the proceeding would have been different if Tasha, Tuesday, and Shantell had testified. At the trial, the State's five occurrence witnesses testified as to one version of events in which defendant fired the gun, and defendant testified to another version in which he did not. If the defense had presented the testimony of additional occurrence witnesses corroborating aspects of defendant's version of events, it arguably may have changed the way the jury weighed the evidence and resulted in a different outcome.

¶ 29        We reject the State's argument that trial counsel was not arguably ineffective for failing to call Tasha and Tuesday because the jury may have afforded their testimony little weight, as they were defendant's family members. Questions of witness credibility are not appropriate for the first stage of postconviction proceedings. *People v. Coleman*, 183 Ill. 2d 366, 385 (1998).

¶ 30        The State also notes that criminal histories for Tasha, Tuesday, and Shantell were disclosed during discovery. However, these documents are not contained in the record. The record does not indicate what offenses these witnesses had been convicted of or whether their prior convictions could have been used to impeach their credibility. Accordingly, it is unclear what relevance, if any, the criminal histories of these witnesses would have had concerning their potential testimony.

¶ 31        We reject the State's argument that it would have been improper for defense counsel to call Tasha or Tuesday as witnesses because neither of them alleged in their affidavits that they would have waived their fifth amendment rights in order to testify on defendant's behalf. The State notes that Tasha and Tuesday were charged with criminal trespass to a residence in connection with the

9

instant case, and these charges were still pending against them during the trial. However, Tasha and Tuesday indicated in their affidavits that they were willing to testify. At this early stage, it was not necessary for them to specify that they would have waived their fifth amendment rights in order to do so. We also note that the cases the State has cited in support of its argument involve situations where witnesses who had already asserted their fifth amendment rights were not called to testify or were barred from testifying. See *People v. Myers*, 35 Ill. 2d 311, 333-34 (1966); *People v. Human*, 331 Ill. App. 3d 809, 819-20 (2002). This case is distinguishable because Tasha and Tuesday have given no indication that they would have invoked their fifth amendment rights if they were called to testify.

¶ 32        Finally, we reject the State's argument that the testimony of Tasha, Tuesday, and Shantell would not have changed the result of the trial because it was not exonerating. At this stage, defendant is merely required to show that it is arguable that there is a reasonable probability that the result of the proceeding would have been different if his counsel had called these witnesses to testify. See *Hodges*, 234 Ill. 2d at 17. Defendant has met this standard. See *supra* ¶ 28.

¶ 33                                III. CONCLUSION

¶ 34        The judgment of the circuit court of Will County is reversed. The matter is remanded for further postconviction proceedings.

¶ 35        Reversed and remanded.