Aharon RON, Appellant,

v.

George C. WILKINSON, Warden, Federal Correctional Institution, Danbury, Connecticut, et al., Appellees.

No. 193, Docket 77–2063.

United States Court of Appeals, Second Circuit.

Argued Sept. 30, 1977.

Decided Nov. 21, 1977.

Sheri L. Johnson, New Haven, Conn., Law Student (Judith P. Resnik, New Haven, Conn., of counsel, and Dennis E. Curtis, Stephen Wizner, Mary F. Keller, New Haven, Conn., on the brief), for appellant.

Frank H. Santoro, Asst. U. S. Atty., D. Conn., New Haven, Conn. (Richard Blumenthal, U. S. Atty., D. Conn., on the brief), for appellees.

Before LUMBARD, MOORE and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

Aharon Ron appeals from a judgment of the United States District Court for the District of Connecticut, Jon O. Newman, *J.*, dismissing his petition for a writ of habeas corpus. The basis of appellant's petition was that he had been unlawfully denied 90 days of statutory good time after an improper prison disciplinary proceeding. The district court considered only petitioner's papers and did not require any answer from respondents or conduct any hearing. We hold that, on this record, it was error to dismiss the petition.

### I

Appellant, who was convicted of various federal offenses in 1973, is now a prisoner in the Federal Correctional Institution at Danbury, Connecticut.[1] The loss of good time, however, grows out of a disciplinary proceeding conducted in September 1976 at the Federal Correctional Institution at Lexington, Kentucky, after appellant was found hiding in a barn on the prison grounds with a female visitor.

It is important to focus on what the petition presented to the district court, since the judge ruled merely on the papers before him. The petition claimed that the barn was not off limits to appellant, that he had been there many times before with permission from Prison Counselor Moses, that the visitor was an authorized visitor, that appellant did nothing improper with his visitor, and that there was an innocent reason, set out in detail in the petition, for the two of them to be where they were found.[2] Petitioner further alleged that a three-person Unit Disciplinary Committee (UDC), including one Mary McCroskey, charged him with escape and with being in an unauthorized area, found him guilty of both charges and then referred his case for a hearing before the Institution Disciplinary Committee (IDC), apparently in accordance with procedures provided for by applicable regulations.[3]

The petition also alleged that petitioner "does not communicate well in the English language," that he was presented with three forms before his IDC hearing, that he did not understand the forms and refused to sign any except the one requesting Prison Counselor Moses as his representative, that appellant was told that he had to sign all the papers or none, and that "accordingly [he] was not permitted to request a representative."[4] Still according to the petition: Petitioner had no representative at the IDC hearing, and the charges were amended to exclude escape, but to add unauthorized contact with the public and conduct in violation of posted regulations. Petitioner now admits that he made some untrue statements at the hearing out of a desire to protect "Counselor Moses who had always been kind" to him. The three-per-

1. Appellant was convicted in March 1973 of violating 18 U.S.C. §§ 1341, 1342 and 2314 and of conspiracy to violate each in the United States District Court of the Southern District of New York, and received a total sentence of 10 years, pursuant to 18 U.S.C. § 4208(a)(2). This conviction and sentence was affirmed without opinion by this court sub nom. *United States v. Garner*, 485 F.2d 677 (2d Cir. 1973), cert. denied, 416 U.S. 935, 94 S.Ct. 1933, 40 L.Ed.2d 286 (1974). A subsequent denial of a motion for retrial was affirmed by order of this court dated March 18, 1975.

2. The petition alleged that while appellant was seeking permission to talk with his visitor privately, she, frightened by another inmate, ran away from the main visiting area and into the barn. Appellant claims that upon witnessing his visitor's flight he followed her to the barn to ensure her safety. We are not called upon to assess the truthfulness of these allegations.

3. See Federal Bureau of Prisons Policy Statement on Inmate Discipline, No. 7400.5D, ¶ 8(f) (July 7, 1975).

4. Prison regulations provided for such a representation, upon request. Id. at ¶ 9(c)(2). This subsection provides in part: "An inmate will be provided the service of a full-time staff member to represent him at the hearing before the Institution Discipline Committee should he so desire."

son IDC, including one Ray W. McCroskey, found petitioner guilty of the three charges and ordered forfeiture of 280 days statutory good time, transfer to a more secure institution and continued disciplinary segregation. On an administrative appeal, the Warden expunged the charge of unauthorized contact with the public and reduced from 280 to 90 the number of good time days lost.

Petitioner claimed that this penalty was imposed without due process of law because he "was denied a representative he wanted and needed . . ., because he did not understand the proceedings and could not defend himself," because the "IDC was not impartial" (apparently, the McCroskeys are related),[5] because petitioner did not receive adequate notice of the charges and because the finding of guilt was arbitrary and capricious.

As indicated above, the judge did not require any answer to this petition or conduct a hearing, but dismissed the petition sua sponte. The judge's written memorandum stated that petitioner's "disciplinary record now reflects only a finding of guilt on the charge of being in an unauthorized place," for which 90 days good time has been forfeited, and that the only real issues at the disciplinary hearing were whether the barn "was an authorized area" and whether petitioner "was aware that it was unauthorized." On this, the judge concluded that the papers before him and "plain common sense" allowed only answers unfavorable to petitioner.[6]

Turning to the lack of representation at the hearing, the judge held that petitioner had no constitutional right to counsel at the prison disciplinary hearing, but acknowledged that under the Federal Bureau of Prisons Policy Statement, see note 4 *supra*, petitioner did have the right to substitute representation and that the hearing arguably "did not conform precisely" to the requirements there set forth. However, the judge concluded that

5. We are so informed by the briefs.

6. The judge noted the ruling of the Federal Bureau of Prisons, disclosed in petitioner's papers, that petitioner

petitioner's recalcitrance in not acknowledging the notice forms prepared by the prison to protect other procedural rights of petitioner's substantially undermines his complaint about the . . . [prison's] failure to act upon the one form he was willing to sign. Moreover, the lack of representation does not appear to have resulted in any prejudice. Having conceded his presence in the barn, petitioner's only defense to the charge of being in an unauthorized place, as I understand it, could not have been argued persuasively by even the most forceful advocate.

Petitioner's other arguments were rejected summarily. Following commendable local practice, even though the petition was dismissed the United States Attorney was served with copies of all relevant papers and he has appeared in the appellate proceedings.

## II

Petitioner raises here essentially the same claims that were pressed in the district court. We conclude that the district court erred in dismissing the petition. We reach this result reluctantly because we wish neither to interfere with responsible prison authorities nor to overrule a trial judge who deals with these problems week in and week out in a fair and informed manner. Nevertheless, as we view the applicable law and the facts, we believe that we have no choice.

■ To begin with, the loss of 90 days good time is a constitutionally significant penalty. The constitutional claim to the right of some type of representation at the IDC hearing was a serious one. While the Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), did decline to hold that inmates have a right to *counsel* in disciplinary proceedings, see also *Baxter v. Palmigiano*, 425 U.S. 308, 315, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), the Court did state that there was a

and a female visitor were found in an old barn several hundred yards north of the reservation. Clearly this was an unauthorized area *for visitation purposes.*

right to *representation* for certain inmates under certain circumstances:

> Where an illiterate inmate is involved, however, or where the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or if that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff.

*Wolff v. McDonnell, supra,* 418 U.S. at 570, 94 S.Ct. at 2982.

Petitioner claims that such "substitute aid in the form of help from the staff" was his constitutional right because of his difficulty in communicating in English. (It was clearly his right under Federal Bureau of Prisons policy whether or not he was literate. See note 4 *supra*). Without some sort of response conclusively demonstrating petitioner's literacy, or a hearing to resolve the issue, the district court could not decide whether petitioner was constitutionally entitled to a representative at the disciplinary hearing. The reference to petitioner's "recalcitrance" in seeking to sign one form (asking for representation) and not the others (acknowledgements of notice of hearing and rights at the hearing) can only be speculative on this record. It is just as possible that Counselor Moses only explained the representation form to petitioner or that, if all three were explained, petitioner only understood the one he was willing to sign. In any event, we do not see why failure to sign the two other forms must necessarily have deprived petitioner of representation, if he was otherwise entitled to it.

The district court felt that any error in failure to provide representation was harmless because "even the most forceful advocate" could not have brought about a different result. We put to one side the question whether wrongful denial of representation at a prison disciplinary proceeding, like wrongful denial of counsel at a criminal trial, can ever be harmless error. See, e. g., *Geders v. United States,* 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976). It is by no means apparent that substitute representation would have been fruitless. Petitioner in the first instance was interested in reducing, as well as eliminating, his penalty, and the later reduction from 280 to 90 days within the administrative appeal process indicates that further reduction was at least a possibility.[7] Also, petitioner claims that at his hearing he concealed the real facts to protect Counselor Moses, who had previously given him permission to go to the barn. We are not prepared to say that Ron would not have told the real facts if he had been advised by substitute counsel or that a "forceful" representative could not possibly have persuaded the IDC to mitigate the penalty because appellant had frequently used the barn with permission.

■ Moreover, an alert representative would also have objected to the conflict of interest apparent in having related persons on the UDC, which first brought the charges, and the IDC, which first heard them. While we do not hold that the interrelationship presented here, in the context of prisoner disciplinary proceedings, necessarily denied appellant an impartial hearing,[8] we doubt that the charge of partiality should have been dismissed so summarily. In any event, we are troubled by these allegations and hope that in the future the prison authorities can effect a more judicious allocation of personnel.[9]

---

7. The importance of representative aid is shown by this reduction of sentence, which was achieved through administrative appeals, whose quality, assuming appellant's illiteracy, reflects substantial aid in preparation. In a slightly different context, the Supreme Court has recognized that lack of representation which conceivably affects sentencing cannot be dismissed as harmless error. *United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972).

8. See *Braxton v. Carlson,* 483 F.2d 933, 941 (3d Cir. 1973) and *Meyers v. Alldredge,* 492 F.2d 296, 305–07 (3d Cir. 1974), noted in *Wolff v. McDonnell, supra,* 418 U.S. at 572–73, n. 20, 94 S.Ct. 2963.

9. Conversely, to the extent that petitioner claims an absence of any evidence to support a disciplinary finding of guilt, the claim is frivolous, as the district judge apparently regarded it. We also agree that the allegation of lack of

Accordingly, we feel that we must remand this case to the district court for further proceedings. Since the petition for a writ is based upon alleged constitutional deprivation, it would ordinarily be necessary on these facts to determine whether petitioner sufficiently falls within the special circumstances of *Wolff v. McDonnell, supra,* to be entitled to representation at a disciplinary hearing. However, since the constitutional claim is clearly a substantial one, the district judge also has at least pendent jurisdiction to enforce the clearly stated policy of the Federal Bureau of Prisons to provide such representation to all prisoners, literate or not. On remand, therefore, the judge has a number of courses open to him. One is to hold an evidentiary hearing on whether appellant was illiterate at the time of the disciplinary hearing. If it is determined that he was not, the judge could then dismiss the petition on the ground that appellant was denied no constitutional right. However, if it is determined that appellant was illiterate, the judge should direct restoration of the 90 days good time unless another disciplinary hearing, at which appellant does have representation, is held within a reasonable time. Finally, since the constitutional claim is a substantial one, the judge could also follow the latter course without any further hearing, if he chooses to keep jurisdiction over the pendent claim based on the explicit policy of the Federal Bureau of Prisons.

One further matter should be discussed. Referring to a number of recent decisions of this court,[10] the Government has taken pains on this appeal to defend the procedure in the Connecticut district court of not automatically requiring an answer in every prisoner petition case. The cases referred to have criticized the practice of dismissing prisoner complaints without requiring a response and have emphasized the latitude granted to pro se pleadings, see *Mawhinney v. Henderson, supra,* 542 F.2d at 2; the problems created in appellate proceedings when there is no appellee, see *Lewis v. State of New York, supra,* 547 F.2d at 6; and the general waste of judicial resources when a case must be remanded for development of the facts, see id. We repeat the concerns expressed there and reiterate that district judges must be careful not to dismiss sua sponte prisoner petitions that contain sufficient allegations of constitutional violations.

But we are also aware that "automatic service" of pro se complaints would place burdens "on public officials and private persons to respond to many totally frivolous complaints." See *Pugh v. Hull,* 419 F.Supp. 39, 40 (D.Conn.1976) (failure to exhaust state judicial remedies apparent on face of petition). And we do not suggest that "automatic service" of such petitions upon respondents is called for. As the new habeas corpus rules recognize,

> If it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified.[11]

notice became unimportant with the amendment of the charge.

10. *Lewis v. State of New York,* 547 F.2d 4 (2d Cir. 1976); *Cunningham v. Ward,* 546 F.2d 481 (2d Cir. 1976); *Mawhinney v. Henderson,* 542 F.2d 1 (2d Cir. 1976); *Burgin v. Henderson,* 536 F.2d 501 (2d Cir. 1976); *Frankos v. LaVallee,* 535 F.2d 1346 (2d Cir.), cert. denied, 429 U.S. 918, 97 S.Ct. 310, 50 L.Ed.2d 284 (1976).

11. Rules Governing Section 2254 Cases in the United States District Court. Rule 4 provides in full:

Rule 4. Preliminary Consideration by Judge

The original petition shall be presented promptly to a judge of the district court in accordance with the procedure of the court for the assignment of its business. The petition shall be examined promptly by the judge to whom it is assigned. If it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified. Otherwise the judge shall order the respondent to file an answer or other pleading within the period of time fixed by the court or to take such other action as the judge deems appropriate. In every case a copy of the petition and any order shall be served by certified mail on the respondent and the attorney general of the state involved.

We agree with the philosophy of these rules, which were applicable to the proceedings below in the discretion of the district court.[12] See also Recommended Procedures for Handling Prisoner Civil Rights Cases in the Federal Courts, Tentative Report No. 2, Part IV, Section D (Federal Judicial Center 1977). But it must be emphasized that district judges should take great care not to dismiss such petitions too swiftly without a response. As the Report just cited recommends,

> In borderline cases, the court should not dismiss, but should let the case proceed
>
> .    .    .    .

Id. at 57. We do not believe that frivolous prisoner petitions require answering papers by the correct public official or a full-fledged hearing, but the lack of merit of the petition should be unmistakable to justify sua sponte dismissal. See American Bar Association Project On Standards For Criminal Justice, Standards Relating to Post-Conviction Remedies § 4.2 (Approved Draft, 1968).

Case remanded for further proceedings consistent with this opinion.