**UNITED STATES of America, ex rel. Samuel L. SOMMER, Plaintiff,**

v.

**Correctional Officer R. DIXON, Sergeant Miner, Lt. McCasland, Defendants.**

No. 79–CV–221.

United States District Court, N. D. New York.

Oct. 9, 1981.

Samuel L. Sommer, pro se.

Robert Abrams, Atty. Gen. of the State of New York, Albany, N. Y., for defendants; Alan M. Adler, Asst. Atty. Gen., Albany, N. Y., of counsel.

## MEMORANDUM—DECISION and ORDER

JAMES T. FOLEY, District Judge.

Pursuant to my memorandum-decision and order of March 29, 1979, following the liberal policy of the Court of Appeals, Second Circuit, to obtain responses to the New York State pro se prisoner complaints under 42 U.S.C. § 1983, I directed the voluminous one in this action to be filed and served upon the three named correction officers. *See Lewis v. State of New York*, 547 F.2d 4 (2d Cir. 1976); *Fries v. Barnes*, 618 F.2d 988 (2d Cir. 1980). The history of the litigation, and the persistent and relentless activity in regard to it of the plaintiff, presently an inmate of Attica Correctional Facility, is described in my memorandum-decision and order of July 10, 1980.

In that decision, I noted that the Staff Attorney of the branch of Prisoners' Legal Services of New York, which services Clinton Correctional Facility, where the constitutional violations and deprivations were alleged to have occurred, advised after review of the file that it could not represent the plaintiff in the case. It was also noted that in November 1979, the plaintiff advised he would retain his own counsel, an Attorney Carl Spitznagel. This unusually named attorney has never appeared on the scene. It was also noted that plaintiff was displeased with my judicial attention to his case inasmuch as he filed a pro se petition for a writ of mandamus against me which

was denied by the Second Circuit Court of Appeals by order of May 8, 1980. I also denied and dismissed a habeas corpus application that I described as the largest one ever encountered in my experience which was admittedly prepared and filed for a Morris Goldfeld by this plaintiff Samuel L. Sommer by memorandum-decision and order of September 17, 1980. (80–CV–560, NDNY). The Court of Appeals, Second Circuit, denied a motion for a certificate of probable cause from this decision by order dated June 1, 1981. Since that time, Sommer filed an application of which I had no notice with Chief Judge Howard G. Munson for reassignment of the case to another judge, which the Chief Judge denied by order of July 30, 1981. Plaintiff with a copy of his letter dated September 16, 1981, to the Clerk of the Court of Appeals, Second Circuit, mailed me a copy of his new pro se application for a writ of mandamus against me. The application is based upon my failure to decide a pending motion of the defendants to dismiss this action by reason of the answers of the plaintiff to seven clear and precise interrogatories served by the Attorney General.

In regard to this motion decided herein, Assistant Attorney General Adler contends in his affidavit filed January 27, 1981, in support of the motion, that the answers of the plaintiff to the interrogatories which were not filed by the plaintiff until January 21, 1981, after motions were made and several orders by me directed their filing, indicate there is not alleged in the complaint against these three named defendants viable claims under 42 U.S.C. § 1983. I agree, and the motion to dismiss the complaint for that reason shall be granted and for other reasons now to be discussed.

The complaint in this action as described in my memorandum-decision and order of March 29, 1979, consisted of eighteen pages and had an attached summary with Exhibits from A to A–6, pp. 19–25. There have been sixty-six (66) docket entries by the Clerk since the filing of the complaint. The complaint as I read it at that time alleged lack of due process and fair hearing at a Clinton Correctional Facility Superintendent's Proceeding, and malicious and in-

tentional destruction by the three defendants of plaintiff's papers, legal materials, books and other personal property. I have reread this complaint upon consideration of the motion with greater care and to my mind it is a mishmash of generalities and inapplicable rhetoric, with citations and lengthy excerpts from federal cases. There is very little reference to the facts of the constitutional violations alleged in the wordy complaint. The complaint in every sense violates the provisions of F.R.Civ. Proc. 8(a). The summary and exhibits attached to the complaint from my reading, and I suggest it all be read at the federal appellate level when the inevitable appeal is taken, indicate contrary to the complaint that the Superintendent's Proceeding met the requirements of settled case law for prison disciplinary hearings of this kind in which the plaintiff was involved. The plaintiff, the summary and exhibits demonstrate, attempted to dominate the administrative proceeding in which he faced written charges in the same manner that he attempts to dominate this federal court. The plaintiff according to his own exhibits appeared before an Adjustment Committee prior to the Superintendent's Proceeding and was permitted to read his summary into the record during the Superintendent's Proceeding. The plaintiff presented twenty-two (22) questions to the Fact Finder, and stated his reasons in not presenting certain witnesses to testify, and listed the names of sixteen (16) correction officers and employees who would verify that at no time had he ever requested foodstuff, contraband or ever attempted bribery of any kind in the prison system. (pp. 22–25, Exhibits attached to complaint). There was a review of the Superintendent's Proceeding decision by the Commissioner of Correctional Services who affirmed it on 8/28/78. (Ex. "G", p. 39). This submission of exhibits by the plaintiff contradicts in my judgment the allegations of plaintiff in the complaint that he was deprived of due process and fair hearing at the Superintendent's Proceeding. This belated, careful reading of the complaint and exhibits, admittedly not done in the first instance due to the caution and compulsion of Second Circuit rulings to obtain response to pro se complaints of state prisoners, convinces me the plaintiff received a fair hearing with no violation of due process requirements. *See Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Powell v. Ward*, 643 F.2d 924 (2d Cir. 1981); *cert. denied, sub nom. Ward v. Powell*, —— U.S. ——, 102 S.Ct. 131, 69 L.Ed.2d 111 (1981).

■ Furthermore, as Assistant Attorney General Adler points out in his affidavit, the answers to the interrogatories by plaintiff apparently destroys any vestige of any viable claim against the defendants, the three named correction officers. The answers in their convoluted wording states he has no damage action herein against those who seized his property, and, as I suspected, none of the three defendant correction officers presided at the Superintendent's Proceeding. For these reasons alone, it is evident to me there are no viable claims alleged against the three correction officer defendants. There has to be a personal involvement and the doctrine of respondeat superior is inapplicable in 42 U.S.C. § 1983 actions. *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978); *Duchesne v. Sugarman*, 566 F.2d 817, 830 (2d Cir. 1977). It should also be noted that plaintiff states in answer to interrogatories 4 and 5, Superintendent LeFevre on June 24, 1978, returned four (4) bags of property to him, leaving a balance plaintiff says of six (6) bags.

■ This burdensome review of countless papers to finally reach the decision that the complaint herein filed and served in the first instance is meritless, reinforces my belief that indiscriminate and routine filing and service of pro se state prisoner complaints to obtain response just adds unnecessary burdens to their proper processing and disposition. It is established that district courts have the power to dismiss such complaints sua sponte when on their face there is no federal merit. *See Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *see also Ron v. Wilkinson*, 565 F.2d 1254, 1258–59 (2d Cir. 1977). An open door and welcome policy for filing

and service to obtain response in my judgment is bound to and does encourage and stimulate filings of meritless complaints in the federal courts. The expressions of the United States Supreme Court should also be given consideration in the review of such complaints that federal courts do not sit to supervise state prisons, and federal courts cannot assume State legislatures and prison officials are insensitive to the requirements of the constitution or sociological problems in the penal system. *Meachum v. Fano*, 427 U.S. 215 at 224, 229, 96 S.Ct. 2532 at 2538, 2540, 49 L.Ed.2d 451 (1976); *Rhodes v. Chapman*, —— U.S. ——, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981).

Particularly relevant to this action is the ruling that prison authorities should be accorded wide-ranging deference in the execution and adoption of policies and practices that in their judgment are needed to preserve internal order and discipline, and to maintain institutional security. *Bell v. Wolfish*, 441 U.S. 520, 547–48, 99 S.Ct. 1861, 1878–79, 60 L.Ed.2d 447 (1979).

The complaint is dismissed for the reasons stated in the Attorney General's motion and for the other reasons stated herein.

It is so Ordered.