Robert WALKER, Plaintiff–Appellant,

v.

Robert McCLELLAN, Superintendent, Thomas A. Coughlin, III, Defendants,

L. Bates, Hearing Officer, Defendant–Appellee.

No. 1358, Docket 96–2323.

United States Court of Appeals, Second Circuit.

Argued May 7, 1997.

Decided Oct. 9, 1997.

**128**

Kenneth R. Stephens, Poughkeepsie, N.Y. (Prisoners' Legal Services of New York, Poughkeepsie, N.Y.), for Plaintiff–Appellant.

Martin Hotvet, Assistant Attorney General, Albany, N.Y. (Dennis C. Vacco, Attorney General of the State of New York, Peter H. Schiff, Deputy Solicitor General, Peter G. Crary, Assistant Attorney General, Albany, N.Y., Of Counsel), for Defendant–Appellee.

Before: FEINBERG, OAKES, and LEVAL, Circuit Judges.

LEVAL, Circuit Judge:

Robert Walker, an inmate at the Southport Correctional Facility in the custody of the New York State Department of Correctional Services who was disciplined for violation of prison rules, appeals from the judgment of the United States District Court for the Western District of New York (Larimer, *C.J.*). The district court granted summary judgment in favor of defendant L. Bates, the correctional officer who conducted Walker's disciplinary hearing, and dismissed Walker's action under 42 U.S.C. § 1983. Walker claims Bates denied his constitutional rights by refusing his request for witnesses at the hearing. We affirm because, under the circumstances, the hearing officer was well-justified in the belief that his ruling was consistent with Walker's constitutional rights. Accordingly, dismissal was properly based on qualified immunity.

*Background*

In a misbehavior report dated December 5, 1990, Walker was charged with violating the rules prohibiting possession of weapons and possession of state bedding in excess of authorized issue. The report was written by Corrections Officer P. Youmans, who stated that, while doing a routine cell frisk, he discovered in Walker's wall locker a 9 1/2 inch metal rod and unauthorized extra bedding, consisting of a pillow, sheets and pillow cases.

The disciplinary hearing was conducted before Correctional Officer Bates. Officer Youmans's report was read in its entirety. Walker admitted possession of the unauthorized bedding. He denied possession of a contraband weapon. Walker was given the opportunity, and declined, to make a statement in his own behalf.

Walker asked to call a number of witnesses: Officers Youmans, Kwasnek and Gibson, Sergeant Zarnicki, and inmate Arkin. When Walker requested that Corrections Officer Kwasnek be called, Bates asked what the materiality of Kwasnek's testimony would be. Walker answered that he was "asking for the right to call witnesses," but declined to give any further explanation. Bates then asked the expected materiality of the testimony of Sergeant Zarnicki. Once again, Walker gave no answer, indicating only that "I have a right to call witnesses and I do so wish to say that at this time." Bates asked for the materiality of the testimony of Gibson, and was given the same response. Bates then asked what testimony Officer Youmans was expected to offer "in addition [to] what is alleged in the misbehavior report." Again, Walker declined to state why the witness's testimony would be relevant, citing only his "right to call witnesses all of these witnesses that I have indicated so have ... material value an[d] care to enlighten the situation."

Bates refused to call any of Walker's requested witnesses "upon the grounds that the hearing officer cannot determine whether or not their testimony will be ... material to the facts alleged in this ... misbehavior report." Bates found Walker guilty of the charge of possession of a contraband weapon, and sentenced him to 120 days in a special housing unit ("SHU") and loss of privileges.

The penalty was reversed in subsequent administrative proceedings after Donald Selsky, acting on behalf of the Commissioner of the Department of Correctional Services, found that the denial of witnesses was improper. No rehearing was convened, and the charges were dropped. Walker was released from the SHU after having served 74 days of his sentence. His prison records were expunged of all references to the misbehavior hearing.

Walker then brought this action.[1] Walker alleged that his 74–day confinement in SHU constituted a violation of the Due Process Clause because Bates wrongfully denied him the opportunity to call witnesses on his behalf. In an order dated March 21, 1995, the district court dismissed Walker's complaint. The court concluded that Walker's 74–day confinement in the SHU "was not significantly different from the ordinary conditions of prison life," and thus did not implicate a protected liberty interest under *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Alternatively, the district court noted that dismissal was mandated on account of Bates's right to qualified immunity because Walker had no clearly established right to call witnesses in his defense at the disciplinary hearing when he would not articulate how their testimony would be material. Walker appeals.

### Discussion

■ Qualified immunity is a proper ground for summary judgment in suits against prison officials for civil damages under 42 U.S.C. § 1983. *See Rodriguez v. Phillips,* 66 F.3d 470, 475 (2d Cir.1995). Qualified immunity protects prison officials from personal liability under § 1983 when their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

■ Walker argues that the district court erred in granting summary judgment on the basis of qualified immunity because Bates's refusal to allow him to call witnesses at the disciplinary hearing violated the rule of law set out in *Fox v. Coughlin,* 893 F.2d 475, 478 (2d Cir.1990), which was decided prior to the events in question. In *Fox,* a prison inmate was charged with pushing an officer. *Id.* at 476. The inmate claimed that prison guards attacked him from behind, and that he pushed the guard in self-defense. *Id.* At his disciplinary hearing, the inmate asked the hearing officer to interview three inmates and four correctional officers who had been present at the scene. *Id.* at 476–77. The hearing officer interviewed the inmates and two of the four officers, but refused to interview the other two officers because he believed their testimony would be "redundant." *Id.* at 477.

The *Fox* court held that the hearing officer's actions were protected by qualified immunity because, at the time of the officer's refusal to interview the two officers, there was no clearly established right to have all potential witnesses interviewed in the course of disciplinary proceedings. *Id.* at 477–78. The court cautioned, however, that a hearing officer's failure to "interview an inmate's requested witnesses without assigning a valid reason may in the future provide a sufficient basis for a viable § 1983 action." *Id.* at 478. As the court explained, the hearing officer in the case had no reason to believe that the testimony of the two additional corrections officers would be redundant. *Id.* The inmate had given an explanation for his behavior, and the officers would be able to confirm or deny his version of the altercation. *Id.* Neither the hearing officer nor any other prison official had interviewed the proposed witnesses. *Id.* Although both officers requested as witnesses had endorsed the disciplinary report filed against the inmate, the court considered this inadequate to support a conclusion that their testimony would be cumulative. *Id.*

We do not read *Fox* to mean that, as of 1990, an inmate had a clearly established constitutional right to call witnesses where

---

1. The action was brought against Bates and two other officials of the Department of Correctional Services. In a separate ruling, which Walker has not appealed, the district court dismissed the case against the other two defendants.

the inmate was unwilling to state the relevance of their proposed testimony and offered no defense to the charges against him. At the disciplinary hearings, Walker asserted no defense and presented no theory on which the witnesses' testimony could be helpful to him. The inmate in *Fox*, in contrast, had explained a theory of defense to which the testimony of the prison guards was obviously relevant.

Supreme Court cases decided prior to December 1990 established that an inmate's right to call witnesses in a disciplinary hearing was qualified by the limitation that exercise of the right would not be permitted to impinge on correctional goals. *See Wolff v. McDonnell*, 418 U.S. 539, 566, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1974); *Ponte v. Real*, 471 U.S. 491, 496, 105 S.Ct. 2192, 2195, 85 L.Ed.2d 553 (1985). The Supreme Court had also explained that a hearing officer was permitted to exclude irrelevant or unnecessary testimony. *See Real*, 471 U.S. at 496, 105 S.Ct. at 2195. Although this circuit had not considered the precise issue, at least one other circuit had held prior to 1990 that an inmate could be required to inform prison officials of the expected relevance of witnesses' testimony, and that an inmate's failure to do so would justify a hearing officer's refusal to allow the testimony. *See Bostic v. Carlson*, 884 F.2d 1267, 1274 (9th Cir.1989). Given Walker's refusal to explain the relevance of the requested witnesses' testimony, coupled with the absence of any defense offered for which the testimony of the witnesses might have provided confirmation, we cannot say that the hearing officer's refusal to allow Walker to call witnesses violated a clearly established principle of constitutional law. Qualified immunity was therefore appropriate.

Walker contended in an affidavit submitted to the district court that he wanted to question Youmans and the other proposed witnesses about whether the contraband weapon might have been hidden in his locker by the previous occupant of the cell, and whether it was in an area accessible to other inmates. But he said no such thing at the disciplinary hearing. The hearing officer had no obli-

gation to guess at Walker's purpose in calling the witnesses.

*Conclusion*

The judgment of the district court is affirmed.