155 F.3d 26
 WILLIE HORNE, Plaintiff-Appellant,
v.
Thomas A. COUGHLIN, III, Commissioner, New York State
Department of Correctional Services; Philip Coombe, former
Superintendent, Eastern Correctional Facility; Donald
Selsky, Coordinator, Inmate Discipline; Arthur Kracke,
Lieutenant, Eastern Correctional Facility; and Joseph A.
Demskie, Captain, Sullivan Correctional Facility, in their
individual and official capacities, Defendants-Appellees.
 No. 301, Docket 97-2047.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 17, 1997.
Decided July 27, 1998.
 
 Deborah Schneer, Poughkeepsie, NY (Kenneth R. Stephens, Prisoners' Legal Services of New York, Poughkeepsie, NY, Of Counsel) for Plaintiff-Appellant.
 Katharine Demgen, New York City (Dennis C. Vacco, Attorney General of the State of New York, John W. McConnell, Deputy Solicitor General, Robert A. Forte and Belina Anderson, Assistant Attorneys General, New York City, of Counsel) for Defendants-Appellees.
 Before: CARDAMONE, WALKER, and LEVAL, Circuit Judges.
 LEVAL, Circuit Judge:
 
 
 1
 Plaintiff Willie Horne appeals from an order of the United States District Court for the Northern District of New York dismissing his action brought under 42 U.S.C. § 1983. The only substantial issue on appeal concerns Horne's claim that, while a prisoner in New York state custody, he was denied due process when defendants, various prison system officials, failed to provide him with "counsel substitute" in a disciplinary hearing that resulted in his confinement in the prison's Special Housing Unit ("SHU") for six months. The district court dismissed plaintiff's claim under the authority of Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), concluding that Horne had not suffered the kind of "atypical and significant hardship" as a result of the disciplinary proceedings that might implicate the Due Process Clause. We need not reach the Sandin issue. All the time Horne served in the SHU was pursuant to a disciplinary sentence that did not violate any clearly established procedural right. Defendants accordingly are entitled to qualified immunity. We affirm the dismissal of Horne's claim.
 
 BACKGROUND
 
 2
 In April 1984, Horne entered state prison and began serving a 9-18 year sentence for second degree attempted murder. He was subsequently placed in the Eastern New York Correctional Facility ("Eastern"), where the events at issue in this appeal took place. It is not disputed that, as the court below stated, Horne "is functionally illiterate and has an intelligence level that is so low that he can be classified as mentally retarded."
 
 
 3
 After arriving at Eastern, Horne was enrolled in remedial education classes. On December 13, 1984, a female civilian volunteer teacher at the prison submitted a disciplinary report stating that Horne had violated prison rules by encouraging her to engage in sexual acts with him. She reported that Horne said to her, "Just give me a little kiss on the cheek or anywhere else you please." He said he "loved older women and needed somebody like me." He added, "I wouldn't do bad to a woman and she gives it up cause she wants it." The teacher reported Horne "didn't want to leave [the] room" [where the two were alone] and followed her to her next class. She said she felt "an imminent danger of being accosted."
 
 
 4
 In response to the complaint, on December 19, 1984, defendant Arthur Kracke, an official at Eastern, held a disciplinary hearing. An employee assistant of the facility met with Horne in advance to help him prepare for the hearing, but was not present with Horne when the hearing was conducted. Kracke found plaintiff guilty of the charges, sentenced him to one year in the SHU, and recommended that plaintiff lose one year of "good time" credits. Plaintiff appealed this sentence to defendant Donald Selsky, the Director of Special Housing and Inmate Discipline, who, in January 1985, modified the sentence to eight months in the SHU and eight months recommended loss of good time credits.
 
 
 5
 In April 1985, Horne brought an Article 78 action in New York state court, seeking to have the results of the disciplinary hearing declared void and expunged from his record. In May 1985, while the Article 78 action was pending, Selsky reversed the results of the prior disciplinary hearing--noting that he did so "after discussion with [the] Attorney General's Office"--and directed that an "[a]ssistant should be present at [the] re-hearing."
 
 
 6
 Pursuant to this directive, defendant Joseph Demskie, an official at Eastern, conducted a new hearing on the disciplinary charges on May 9, 1985. At this second hearing, Horne was provided with an employee assistant under the then-current version of the governing regulation. The duties imposed by the regulation on the employee assistant were primarily to advise and render requested assistance; they did not include taking the initiative in mounting a defense. See 7 N.Y.C.R.R. § 251-4.2 (1983) Horne's employee assistant acting under these regulations did not take initiative in presenting any defense on Horne's behalf.
 
 
 7
 Demskie found Horne guilty of the misbehavior charges, sentenced him to 300 days in the SHU, and recommended loss of 300 days of good time credits. On May 28, 1995, Selsky again modified Horne's sentence, to six months in the SHU and six months recommended loss of good time credits. Horne was released from the SHU and returned to general prison population thirteen days later, as his time spent in the SHU had reached the six months to which he was now sentenced.
 
 
 8
 In November 1985, the New York Attorney General's office withdrew its opposition to Horne's still-pending Article 78 proceeding. As a result, by Order of the New York Supreme Court dated December 19, 1985, (Traficanti, J.), the hearing determinations of December 19, 1984 and May 9, 1985 were "annulled and vacated," the charges were dismissed with prejudice, Horne's good time credits were restored, and the references to the disciplinary actions were expunged from his records.
 
 
 9
 In June 1986, Horne brought this suit. Horne contends, inter alia, that defendants violated his due process rights by failing to provide "counsel substitute" at the disciplinary hearings. The gist of the claim is that the duties prescribed for the employee assistant under the New York regulations do not go far enough because they require only passive assistance in the nature of explanations and responses to requests for help and do not require such proactive assertion of a defense as might be rendered by a "counsel substitute." Horne's complaint was later amended to add, inter alia, an Eighth Amendment claim based on the theory that defendants violated Horne's right to be free from cruel and unusual punishment "by severely punishing him for acts for which he was not culpable due to mental retardation" and "by their infliction of punishment which was grossly disproportionate to the infraction alleged to have occurred and shocking to the conscience."
 
 
 10
 A bench trial was held before Magistrate Judge Smith in April 1995.[1] At the close of the evidence, each side moved for judgment as a matter of law pursuant to Fed.R.Civ.P. 50. Before the court rendered a decision, the Supreme Court decided Sandin. The magistrate judge solicited additional evidence and briefing on Sandin 's application to Horne's case. In addition, Horne moved to amend the complaint to add causes of action based on the Equal Protection Clause, the Americans with Disabilities Act, and the Rehabilitation Act.
 
 
 11
 In a Memorandum Decision and Order dated December 3, 1996, Magistrate Judge Smith set forth his findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a). The magistrate judge first found that Horne had either abandoned or failed to prove each of his claims other than the due process claim. In addition, the magistrate judge denied plaintiff's post-trial motion to amend his complaint. With respect to the due process claim, the magistrate judge concluded that Horne's confinement in the SHU "although certainly less pleasant than confinement in [the] general population," did not constitute, under Sandin, the kind of "atypical and significant hardship" in the avoidance of which a state might conceivably create a liberty interest. "Accordingly, plaintiff's sole remaining claim in this action (i.e., that as a functionally illiterate and mentally retarded prisoner he was entitled to 'counsel substitute' at his disciplinary hearings) is without merit, as plaintiff's disciplinary hearings were, under the facts and circumstances of this case, not subject to the protections of the Due Process Clause."
 
 
 12
 The magistrate judge ordered Horne's complaint dismissed and judgment entered in favor of defendants. See Horne v. Coughlin, 949 F.Supp. 112 (N.D.N.Y.1996). This appeal followed.
 
 
 13
 We affirm, but for a different reason. Horne's time served in the SHU was pursuant to a proceeding that did not violate any clearly established right. The defendants were accordingly entitled to qualified immunity under Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).
 
 DISCUSSION
 I. Due Process Claim
 
 14
 "Qualified immunity protects prison officials from personal liability [for damages] under § 1983 when their 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " Walker v. McClellan, 126 F.3d 127, 129 (2d Cir.1997)(quoting Harlow, 457 U.S. at 818, 102 S.Ct. at 2738).[2] "In determining whether a right was clearly established at the time defendants acted, we examine whether the right was defined with reasonable specificity; whether the decisional law of the Supreme Court and the applicable circuit court supports its existence; and whether, under preexisting law, a defendant official would have reasonably understood that his acts were unlawful." Rodriguez v. Phillips, 66 F.3d 470, 476 (2d Cir.1995).
 
 
 15
 Horne claims that the duties imposed by regulation on the employee assistant assigned to aid him at the second hearing did not satisfy due process requirements. According to the regulation,
 
 
 16
 The assistant's role is to speak with the inmate charged, to explain the charges to the inmate, interview witnesses and to report the results of his efforts to the inmate. He may assist the inmate in obtaining documentary evidence or written statements which may be necessary. The assistant may be required by the hearing officer to be present at the disciplinary or superintendent's hearing.
 
 
 17
 7 N.Y.C.R.R. § 251-4.2 (1983). Horne contends that due process requires more--that an inmate in Horne's position be furnished with "counsel substitute," which we understand to mean an assistant who, although not a lawyer, would approach the hearing as a lawyer would, viewing his obligations as going beyond the inmate's instructions to include taking the initiative to protect the inmate's rights and present a defense.
 
 
 18
 We find no clearly established law, in 1985 or now, requiring more than the regulation called for. Plaintiff relies principally upon Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), in which the Supreme Court discussed the procedural requisites of prison disciplinary hearings. Wolff held, for example, that prisoners are entitled to advance written notice of the charges against them, a written statement by the prison factfinders as to the evidence relied upon by them, and the opportunity to call witnesses and present documentary evidence "when permitting [them] to do so will not be unduly hazardous to institutional safety or correctional goals," but that prisoners are not necessarily entitled to retained or appointed counsel. Id. at 563-70, 94 S.Ct. at 2978-81.
 
 
 19
 Plaintiff contends his right to "counsel substitute" was established by the following passage in the Wolff opinion:
 
 
 20
 Where an illiterate inmate is involved, ... or where the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or if that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff.
 
 
 21
 Id. at 570, 94 S.Ct. at 2982.
 
 
 22
 We do not think this language clearly establishes Horne's right to counsel substitute. As a preliminary matter, the passage was dictum. As the Court acknowledged, there was no indication that the prisoner McDonnell qualified for any such assistance. See id. More importantly, the passage is ambiguous. Plaintiff urges that Wolff 's expressed concern for inmates unable "to present" evidence implies that an assistant must be prepared to go beyond the inmate's instructions in "presenting" the inmate's case. This is at best one possible reading of the Wolff dictum. It is far from clear that the Supreme Court intended in that advisory passage to lay down the rule plaintiff here advocates. The sentence from Wolff does not specify that the assistant should be instructed to take initiative, rather than simply respond to the inmate's requests for assistance. The Wolff opinion made clear furthermore that it was leaving the contours of the assistant's role to be developed in future cases. See id. ("We need not pursue the matter further here ... for there is no claim that the named respondent ... is within the class of inmates entitled to advice or help from others in the course of a prison disciplinary hearing."). Finally, any claim that Wolff established a right to counsel-like assistance is in some tension with Wolff 's explanation, in denying prisoners a right to actual counsel, that "insertion of counsel into the disciplinary process would inevitably give the proceedings a more adversary cast and tend to reduce their utility as a means to further correctional goals." Id. at 570, 94 S.Ct. at 2981. This rationale may well apply also to the "insertion" of counsel substitute.
 
 
 23
 Plaintiff further relies upon Vitek v. Jones, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) and Hewitt v. Helms, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). Hewitt merely stated, in dicta, that "Wolff required ... the aid of a staff member or inmate in presenting a defense, provided the inmate is illiterate or the issues complex." 459 U.S. at 465 n. 3, 103 S.Ct. at 868 n. 3. In Vitek, a plurality of the Court stated that "prisoners who are illiterate and uneducated have a greater need for assistance in exercising their rights" and that counsel is required for inmates "thought to be suffering from a mental disease or defect requiring involuntary treatment" because "such ... prisoner[§ are] more likely to be unable to understand or exercise [their] rights." 445 U.S. at 496-97, 100 S.Ct. at 1265-66. These statements, taken together with Wolff, do not establish with clarity that Horne had a right at his disciplinary hearing to counsel substitute.
 
 
 24
 Plaintiff finally relies upon this court's opinion in Ron v. Wilkinson, 565 F.2d 1254 (2d Cir.1977). In Ron, we reversed the district court's dismissal of an inmate's habeas claim. The inmate claimed that he had a right, under the Constitution and prison regulations, to representation at a hearing that resulted in loss of good time. The district court dismissed the inmate's claim without a hearing on the ground, among others, that the inmate suffered no prejudice from the lack of representation. We held that the district court should have held a hearing on the plaintiff's entitlement to representation. 565 F.2d at 1256-58. We further noted that plaintiff's "claim to the right of some type of representation at the ... hearing was a serious one" under Wolff and that it was "by no means apparent that substitute representation would have been fruitless." Id. at 1256, 1257. We did seem to assume that Wolff might require "substitute counsel or ... a 'forceful' representative" whose tasks would include arguing and objecting. Id. at 1257. But this discussion was speculative and it did not "clearly establish[ ]" the right to counsel substitute conforming to the model plaintiff advocates. Harlow, 457 U.S. at 818, 102 S.Ct. at 2738.
 
 
 25
 Thus, plaintiff's claimed "right" to counsel substitute rests only on inconclusive dicta. The authorities cited by plaintiff do not compel the conclusion that the Due Process Clause required that Horne be furnished with an assistant who would act in the manner of counsel, seeking on his own initiative to develop a defense strategy, examine witnesses, or argue on Horne's behalf. Finally, we note that subsequent to Horne's second hearing, this Court stated that "an inmate's right to assistance is limited.... [A]n assistant must be assigned to the inmate to act as his surrogate--to do what the inmate would have done were he able. The assistant is not obliged to go beyond the specific instructions of the inmate because if he did so he would then be acting as counsel in a prison disciplinary proceeding, assistance to which a prisoner is not entitled." Silva v. Casey, 992 F.2d 20, 22 (2d Cir.1993)(per curiam); see Purnell v. Lord, 952 F.2d 679, 684 (2d Cir.1992).
 
 
 26
 We need not discuss Horne's contention that his rights were violated at the first hearing, because it became a nullity. All findings and penalties imposed at the first hearing were vacated,[3] and all the penalties Horne suffered were imposed at the second hearing.[4] See Harper v. Lee, 938 F.2d 104, 105-06 (8th Cir.1991)(per curiam).
 
 
 27
 We therefore affirm the dismissal of Horne's due process claim because defendants were protected by qualified immunity.
 
 II. Remaining Claims
 
 28
 Horne also asserts that his six-month SHU confinement constituted cruel and unusual punishment under the Eighth Amendment because it was imposed without regard to his diminished mental capacities and was grossly disproportionate to the offense. "Restraints on an inmate do not violate the amendment unless they are 'totally without penological justification,' 'grossly disproportionate,' or 'involve the unnecessary and wanton infliction of pain.' " Smith v. Coughlin, 748 F.2d 783, 787 (2d Cir.1984) (quoting Rhodes v. Chapman, 452 U.S. 337, 346, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)). We do not think Horne's six-month SHU detention for making sexually threatening comments to a civilian volunteer violated these standards.
 
 
 29
 Finally, plaintiff argues that the magistrate judge erred in denying his post-trial motion to amend his complaint to add claims under the Equal Protection Clause, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. "As a general matter, the district court has discretion whether or not to grant leave to amend, and its decision is not subject to review on appeal except for an abuse of discretion." Hillburn v. Maher, 795 F.2d 252, 264 (2d Cir.1986)(internal quotation marks and citations omitted), cert. denied, 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 859 (1987). In the circumstances presented here, the magistrate judge was well within his discretion in denying the amendments.
 
 CONCLUSION
 
 30
 The judgment of the district court is affirmed.
 
 CARDAMONE, Circuit Judge, Dissenting:
 
 31
 We have before us a § 1983 action seeking compensation for the violation of a petitioner inmate's constitutional rights. A magistrate judge dismissed the case, and the majority affirms the dismissal on the grounds that respondents are entitled to qualified immunity. Respectfully, I dissent.
 
 FACTS
 
 32
 A brief review of the facts will put this issue in clear perspective. In the early afternoon of December 13, 1984 petitioner, Willie Horne, allegedly asked a female volunteer teacher for "a little kiss on the cheek" while he was alone with her in the academic room of the Eastern Correctional Facility. The woman claimed this request frightened her, but she successfully escorted Horne out of the room without further incident. When she headed off to teach her Spanish class, Horne left the academic area. Petitioner is a functionally illiterate and mentally retarded person with an I.Q. of 65.
 
 
 33
 At a hearing, following the filing of a report of this incident, Horne was found guilty of violating prison rules against threats, encouraging sexual acts and verbal interference. He was sentenced to 365 days of solitary confinement. As a result of his mental disability he was unable to read the report filed against him. Nor was he given any form of assistance at his Tier III hearing, a hearing held in state prison for only the most serious infractions of prison rules.
 
 
 34
 Almost five months later, prison officials reversed the results of this hearing after conversations with the state Attorney General. At a rehearing, Horne was again found guilty of misconduct, but this time he ultimately received a sentence of six months of solitary confinement.
 
 State Proceedings
 
 35
 Prior to the reversal of his first hearing, Horne filed an Article 78 proceeding in New York State Supreme Court. In December 1985 the state court ruled in Horne's favor, annulling the disciplinary determination and expunging the prison hearing proceedings from his record. But by this time Horne had already served his six full months of solitary confinement in a Special Housing Unit (SHU) where he was confined 23 hours a day, fed through a slot in the door, and spent one hour each day alone in a small cage. In contrast, when he was previously among the general prison population, Horne had worked outside in the yard, attended school to learn the alphabet and freely visited the yard when not engaged in a program.
 
 
 36
 The New York Court apparently recognized that the effect of asking for a kiss when unaccompanied by any verbal or physical threat to the victim's person--even in a prison setting--does not warrant six months of solitary confinement. The severity of Horne's punishment seems more shocking than the nature of his offense.
 
 DISCUSSION
 A.
 
 37
 Horne's due process claim does not fail on the ground that respondents are entitled to qualified immunity, as the majority holds. Instead, because respondents violated clearly established law they are not entitled to qualified immunity, and absent that defense, Horne's due process claim must be considered on the merits.
 
 
 38
 The majority's conclusion that the named prison officials are entitled to qualified immunity is predicated on the assumption that Horne suffered no harm as a result of the December 19, 1984 disciplinary hearing (the first hearing). The majority summarily dismisses the first hearing as a "nullity" because a prison official formally vacated the findings and penalties imposed at the first hearing. The following examination of the record, however, demonstrates that the first hearing, and specifically the process utilized at that hearing, remains relevant to an analysis of Horne's due process claim.
 
 B.
 
 39
 The timeliness of disciplinary hearings is governed by regulations found at N.Y. Comp.Codes R. & Regs. tit. 7, § 251D.1 (1983). Section 251D.1(a) provides, in relevant part
 
 
 40
 Where an inmate is confined pending a Disciplinary Hearing ..., the Hearing must be commenced as soon as is reasonably practicable following the inmate's initial confinement pending said Disciplinary Hearing ..., but, in no event may it be commenced beyond seven (7) days of said confinement without authorization of the Commissioner or his designee.
 
 
 41
 (emphasis added). After Horne was accused of violating prison rules on December 13, 1984 he was confined in SHU while awaiting his disciplinary hearing. The first hearing properly was held within seven days of the commencement of his confinement. Yet this hearing eventually was reversed and a rehearing conducted on May 9, 1985 (the second hearing), by which time Horne had remained continuously confined in isolation for almost five months.
 
 
 42
 The record does not show that either the Commissioner or his designee authorized the Department of Correctional Services to hold Horne beyond the seven days pre-hearing detention period. See N.Y. Comp.Codes R. & Regs. tit. 7, § 251D.1(a). Thus, once December 20 passed, we must accept either one of two possibilities explaining Horne's subsequent detention: (1) his detention was administrative and the Department ignored § 251D.1(a)'s timeliness requirement by holding the second hearing 148 days after initially placing Horne in solitary confinement; or (2) his detention was punitive and Horne began to serve his sentence resulting from the first hearing.
 
 C.
 
 43
 Nothing in the record would suggest the Department violated § 251D.1(a) and its timeliness requirement in such a grossly negligent manner; but, assuming it did, this Court could be obligated to proceed on the merits of Horne's complaint. Such a prolonged administrative detention can form the basis of a § 1983 due process claim. The law clearly establishes that due process requires that an inmate confined to administrative segregation be afforded "some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation." Hewitt v. Helms, 459 U.S. 460, 476, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). Although the opportunity to be heard may be satisfied by "an informal, non-adversary review of the information supporting [the inmate's] administrative confinement, including whatever statement [the inmate] wished to submit," id. at 472, 103 S.Ct. 864, that opportunity must be provided within a reasonable time of the commencement of administrative segregation. See id., Rodriguez v. Phillips, 66 F.3d 470, 480 (2d Cir.1995).
 
 
 44
 If the first hearing truly is a "nullity," then Horne had no opportunity to be heard prior to the second hearing. See Gittens v. LeFevre, 891 F.2d 38, 41 (2d Cir.1989) ("The sole opportunity to be heard on an inmate's administrative confinement is at a disciplinary hearing, where the ultimate issue of guilt or innocence will be determined.") (citing N.Y. Comp.Codes R. & Regs. tit. 7, §§ 253.1-253.9). While we have not yet fixed a precise time period within which a hearing on administrative confinement must be held, see Green v. Bauvi, 46 F.3d 189, 195 (2d Cir.1995); Russell v. Coughlin, 910 F.2d 75, 79 (2d Cir.1990), Horne's 148-day confinement prior to the second hearing quite plainly exceeds all boundaries of reasonableness. See Russell, 910 F.2d at 79 (denying qualified immunity to prison officials for holding an inmate in SHU confinement for 10 days without a hearing in violation of New York's seven-day rule). Hence, it could not be objectively reasonable for respondents to believe 148 days of administrative confinement, without an opportunity to be heard, respected petitioner's Fourteenth Amendment due process rights. As a result, qualified immunity would not apply to the first alternative of an administrative detention.D.
 
 
 45
 So we now turn to the second alternative explanation.[1] The only logical explanation for Horne's confinement following the first hearing until the date of the second hearing is that he was serving the sentence imposed on him as a result of the first hearing. Thus, while the second hearing is relevant to analyzing Horne's due process claim arising from his SHU confinement subsequent to May 9, 1985, I believe we must examine the procedures followed at the first hearing when we consider Horne's due process claim with respect to the 141 days of punitive confinement subsequent to December 19, 1984. The majority correctly determines that the Due Process clause does not entitle an inmate in Horne's position to "counsel substitute." However, that conclusion does not end the inquiry because, unlike the procedure followed at the second hearing, Horne received no form of assistance whatever at the first hearing.
 
 
 46
 Decisional law and the state regulations at issue clearly establish that Horne, as a mentally retarded prisoner, was entitled to some form of assistance in defending a prison disciplinary proceeding, even though the nature of that assistance may not rise to the level of counsel substitute. In fact, it requires no citation to observe that the state serves as parens patriae for mentally retarded persons in its custody. Case law, however, clarifies that we as members of a civilized nation afford simple-minded people, whether prisoners or not, legal assistance when their liberty is threatened by a process they do not comprehend. See Vitek v. Jones, 445 U.S. 480, 496-97, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) ("[W]e have recognized that prisoners who are illiterate and uneducated have a greater need for assistance in exercising their rights.... A prisoner thought to be suffering from a mental disease or defect requiring involuntary treatment probably has an even greater need for legal assistance, for such a prisoner is more likely to be unable to understand or exercise his rights."); Wolff v. McDonnell, 418 U.S. 539, 570, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) ("Where an illiterate inmate is involved ... or where the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or if that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff."); see also Hewitt, 459 U.S. at 466 n. 3, 103 S.Ct. 864 ("Wolff required that inmates facing disciplinary charges for misconduct be accorded ... the aid of a staff member or inmate in presenting a defense, provided the inmate is illiterate or the issues complex."); Ron v. Wilkinson, 565 F.2d 1254, 1256-57 (2d Cir.1977) (recognizing a right to representation for certain inmates at disciplinary proceedings).
 
 
 47
 Even New York Department of Corrections regulations recognize as much. See N.Y. Comp.Codes R. & Regs. tit. 7, § 251C.1 ("An inmate shall have the opportunity to pick an employee from an established list of persons who shall assist the inmate when a Misbehavior Report has been issued against the inmate if ... the inmate is ... illiterate ... or the complexity of the issues make it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case."). That the exact contours of the assistant's role are unclear does not diminish the clarity of the right to some form of assistance. Nor can the limited assistance provided at the second hearing cure the absence of such assistance at the first hearing.
 
 CONCLUSION
 
 48
 Accordingly, I would conclude that respondents violated clearly established law by failing to provide Horne with any assistance at the first hearing and therefore are not entitled to qualified immunity. As a consequence, I would proceed to a consideration of the merits of Horne's § 1983 due process claim in light of Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).
 
 
 
 [1]
 By order dated June 14, 1994, the case had been referred to Magistrate Judge Smith by Judge McCurn for all proceedings and entry of final judgment with the parties' consent. See Fed.R.Civ.P. 73
 
 
 [2]
 In a letter submitted after argument, counsel for plaintiff asks us to consider his claim for injunctive relief. We decline to do so. Although Horne's complaint sought injunctive relief, he failed to litigate the issue of his entitlement to such relief in the court below or on appeal. We conclude that the claim is not before us
 
 
 [3]
 Horne is not entitled to relief in connection with the recommended loss of good time credits, since Horne's credits were ultimately restored without any loss and his disciplinary record expunged
 
 
 [4]
 It should be clear from the discussion in the dissenting opinion that Horne did not spend five months of administrative confinement waiting for his second hearing. The 5-month period he spent in SHU pursuant to his first disciplinary sentence (before it was voided), and the few days spent thereafter awaiting the second hearing, were all credited to the service of his eventual six-month sentence. As a result his six months were completed and he was released from SHU thirteen days after the six-month sentence was imposed on May 28, 1995. Thus the six months to which Horne was ultimately sentenced was the only time he spent in the SHU
 
 
 [1]
 The majority agrees Horne's 148 days' confinement was punitive and not administrative. However, whereas I believe those days were served pursuant to the punishment imposed at the December 19, 1984 hearing, the majority attributes these 148 days to the punishment imposed at the May 9, 1985 hearing. I find the defendants' attempt to rationalize Horne's confinement by holding a hearing after the relevant confinement already occurred unpersuasive